UNITED STATES of America,
Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,
Defendant-Appellee.

Metromedia, Inc., Petitioner-Appellant.

No. 115, Docket 28909.

United States Court of Appeals
Second Circuit.

Argued Nov. 30, 1964.

Decided March 8, 1965.

1004

Lionel Kestenbaum, Dept. of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., and Arthur J. Murphy, Jr., Dept. of Justice, Washington, D. C., on the brief), for plaintiff.

Herman Finkelstein, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Simon H. Rifkind, Jay H. Topkis, Allan Blumstein and Carl L. Zanger, New York City, on the brief), for defendant-appellee.

Robert A. Dreyer, of Seligson & Morris, New York City (Charles Seligson, George A. Katz, New York City, on the brief), for petitioner-appellant.

Before FRIENDLY and SMITH, Circuit Judges, and BLUMENFELD, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

Metromedia, Inc., owner and operator of a chain of radio and television stations, moved in the United States District Court for the Southern District of New York to punish the American Society of Composers, Authors and Publishers (ASCAP) for an alleged violation

* Sitting by designation.

of the consent decree entered in United States v. American Society of Composers, Authors and Publishers, S.D.N.Y. Civ. No. 13–95, a government antitrust suit to which Metromedia was not a party. The District Court, Sylvester J. Ryan, Chief Judge, held that Metromedia did not have "the status or standing to move for punishment for contempt" and denied the motion. Metromedia now appeals. We hold that the appeal is properly before us, that Metromedia has no standing to bring the contempt action, and that even if standing existed, Metromedia's claims do not establish any violation of the terms of the decree, and we affirm the order denying the motion.

ASCAP is an association of composers, authors and publishers of musical compositions organized in 1914 for the purpose of assisting its members in policing and protecting their works against copyright infringements. In exchange for non-exclusive rights to its members' works, ASCAP licenses them for public performance, collects and distributes the royalties, and maintains a continuous surveillance over the myriad of music users for possible infringements. ASCAP has risen to a position of vital importance with respect to the thousands of such copyright proprietors who would otherwise be unable to check performances of their compositions; to those in the music industry it has come to represent a vast business enterprise controlling the licensing and distribution of a very large majority of the nation's copyrighted musical wares. See Schwartz v. Broadcast Music, Inc., 180 F.Supp. 322, 332 (S.D.N.Y.1959).

In 1941 the government recognized the need for federal regulation of ASCAP's widespread activities and instituted antitrust proceedings. ASCAP entered into a consent decree whereby ASCAP, among other things, was required to offer licenses under which the mode of payment was related to the amount of music used. The 1941 decree eventually proved to be not wholly effective and in 1950 was supplanted by an amended judgment; the latter enjoined ASCAP from entering into licensing agreements which discriminate between users similarly situated and provided that the type of license granted either accord the user the right to perform all ASCAP compositions or one or more specified works and that a special procedure be followed for the determination of licensing fees, allowing for judicial intervention at the end of sixty days if ASCAP and the prospective licensee are unable to agree upon a reasonable charge.[1] Additional modifications of the decree were made in 1960.

---

1. The procedure for computing fees, as set out in the 1950 amended decree, is as follows:

"IX. (A) Defendant ASCAP shall, upon receipt of a written application for a license for the right of public performance of any, some or all of the compositions in the ASCAP repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when such application is received by ASCAP, the applicant therefor may forthwith apply to this Court for the determination of a reasonable fee and ASCAP shall; upon receipt of notice of the filing of such application, promptly give notice thereof to the Attorney General. In any such proceeding the burden of proof shall be on ASCAP to establish the reasonableness of the fee requested by it. Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the compositions in the ASCAP repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding;

"(B) When an applicant has the right to perform any compositions in the ASCAP repertory pending the completion of any negotiations or proceedings provided for in Subsection (A) hereof, either the applicant or ASCAP may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee. * * *

The present controversy arises out of Metromedia's application for a blanket license covering its ten radio stations, submitted to ASCAP in December 1963, and drafted in purported compliance with the terms of the 1950 supplemental judgment. Metromedia requested a license which would incorporate a markedly different method for computing royalties than was provided in previous ASCAP blanket licenses with local radio stations. Under the prior blanket agreements, the local station paid a sustaining fee based chiefly on a card rate and, as a commercial fee, 2.125% of its "net receipts from sponsors after deduction" of a sales commission, whereas, under Metromedia's scheme, royalties would be based on a percentage of gross receipts, and in the event that gross receipts in any license year exceeded gross receipts for the base year (1962), the percentage royalties payable on the excess would be less.[2] ASCAP refused to quote any fee on the requested basis and took the position that there was nothing in the amended judgment which required it to issue licenses in such a form. Thereafter, in March 1964, Metromedia, without making any further attempt to negotiate with ASCAP or to institute a rate proceeding under Section IX of the amended final judgment,[3] approached the government and demanded that it institute contempt proceedings against ASCAP based on ASCAP's refusal to quote, which Metromedia claimed was in contravention of the provisions of the amended decree. The government replied that it did not propose to make any decision on the request until this court had rendered its opinion in United States v. ASCAP, Application of Shenandoah Valley Broadcasting, Inc. Metromedia then moved in the District Court to hold ASCAP in contempt of court "for its neglect and refusal to comply with and obey the Amended Final Judgment * * *, or in the alternative to direct the [government] herein to so move this court." The motion, opposed by both ASCAP and the government, was denied.

"(C) When a reasonable fee has been finally determined by this Court, defendant ASCAP shall be required to offer a license at a comparable fee to all other applicants similarly situated who shall thereafter request a license of ASCAP, but any license agreement which has been executed without any Court intervention between ASCAP and another user similarly situated prior to such determination by the Court shall not be deemed to be in any way affected or altered by such determination for the term of such license agreement."

2. The fee arrangement which Metromedia contemplated in its license application was quite different from the usual ASCAP blanket license with local radio stations. "Net receipts" is defined in the standard ASCAP agreement to mean the gross amount paid for the use of the licensee's radio broadcasting facilities (for local radio programs), less any advertising commission not to exceed 15% actually allowed to a recognized advertising agency. "Gross amount" includes all amounts received for local radio programs after deducting rate card discounts, agency commissions, net revenue declared at the source, net revenue for political broadcasts, and bad debts. Under the scheme proposed by Metromedia, "gross receipts" would be computed by taking the total revenues received from the sale of broadcasting facilities for local programs together with incidental broadcast revenues and commissions less rate card discounts and bad debts. Since the percentage royalty would depend on the gross receipts for the particular year, the amount collected by ASCAP could vary substantially from the amount collectible under the standard ASCAP formula. It is not clear whether news gathering costs would be a deduction from incidental broadcast revenues or would be nondeductible under sale of station time. Metromedia's formula would exclude trade sales (barter advertising) from gross, contrary to ASCAP's present formula. The total net effect of the changes does not appear in the record.

3. Metromedia's proper recourse at that time was to continue negotiations with ASCAP for the next few weeks until sixty days had elapsed from the date of its application—or, at least, to make a good faith attempt to negotiate during that period. Failing that, Metromedia then would be able to invoke the court's jurisdiction for the purpose of determining a reasonable fee.

■ The denial of Metromedia's contempt motion is properly reviewable by this court; Section 2 of the Expediting Act, 15 U.S.C. § 29,[4] under the circumstances presented here, does not require that appeal be made directly to the Supreme Court from the District Court order. The appellate procedure to be followed in this case appears to us to be governed by the Court's decision in Shenandoah Valley Broadcasting, Inc. v. ASCAP, 375 U.S. 39, 84 S.Ct. 8, 11 L.Ed. 2d 8, amended 375 U.S. 994, 84 S.Ct. 627, 11 L.Ed.2d 467 (1963), on remand 331 F.2d 117 (2 Cir.), cert. den. 377 U.S. 997, 84 S.Ct. 1917, 12 L.Ed.2d 1048 (1964), rather than Terminal R. R. Assoc. of St. Louis v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150 (1924).[5] While circumstances are similar in Terminal R. R. in that the petitioner there was attempting to enforce the provisions of an antitrust decree by instituting a contempt action (in which the government did not originally join) against one of the defendants, one crucial difference is that the petitioner, a co-defendant, was a party to the decree. Its status to initiate the contempt proceedings was not challenged as is Metromedia's here. Involved in the Shenandoah case was the same ASCAP consent decree which is the subject of our present inquiry. Shenandoah Valley Broadcasting, however, unlike Metromedia, was not seeking to hold ASCAP in contempt but instead was attempting judicially to force ASCAP into issuing the type of license that Shenandoah requested. The District Court found that the consent decree did not require ASCAP to issue a special license of that kind, and Shenandoah appealed directly to the Supreme Court under Section 2 of the Expediting Act. In explaining the dismissal of the appeal for want of jurisdiction, the Court held that the Expediting Act did not permit direct appeals from ancillary orders of this type and that such appeals are authorized only from final judgments where the United States is a complainant. "The controversy which is disposed of by the District Court's order is entirely between private parties and is outside the mainstream of the litigation in which the Government is directly concerned." 375 U.S. at 40, 84 S.Ct. at 9. Similarly, Metromedia's motion for contempt evolves from a private controversy between Metromedia and ASCAP over a matter that does not directly concern the United States—the determination of a licensing fee arrangement within the terms of the amended judgment. Cf. Olympic Refining Co. v. Carter, 332 F.2d 260, 263 (9 Cir. 1964).

■■ Finding as we do that this appeal is properly before us, we hold that Metromedia lacks standing to move in this government antitrust action to punish the defendant ASCAP for contempt. Metromedia is not a party to the action and, indeed, could not have intervened as of right. See Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961).[6]

---

4. Section 2 of the Expediting Act reads: "In every civil action brought in any district court of the United States under any of said Acts [antitrust acts], wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court."

5. The Court held in Terminal R. R. that an appeal from an order of the District Court holding defendants in contempt of a prior antitrust decree was governed by Section 2 of the Expediting Act. See also, United States v. California Co-op. Canneries, 279 U.S. 553, 49 S.Ct. 423, 73 L. Ed. 838 (1929); United States Alkali Export Assn. v. United States, 325 U.S.

196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945); De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

6. ASCAP licensees and users have tried in several ways to alter or enforce the terms of the amended consent decree. In Sam Fox Publishing Co., the petitioner sought to intervene directly in order to acquaint the court with its proposals for the modification of certain provisions in the decree (the government had previously rejected these modifications in the form proposed). Shenandoah Valley Broadcasting instituted rate proceedings under Section IX (A) of the 1950 amended judgment in the hope of convincing the

Metromedia relies on Rule 71 of the Federal Rules of Civil Procedure.[7] Rule 71, however, expressly requires that the order sought to be enforced by the non-party be made in favor of that person. Here, no order was made in Metromedia's favor. No monetary or other relief was specifically granted to Metromedia—it was not even named in the judgment—and it is not enough to say that Metromedia was indirectly or economically benefited by the decree. See United States v. Paramount Pictures, Inc., 75 F.Supp. 1002 (S.D.N.Y.1948). The judgment is in favor of the United States alone.

■ The status of persons such as ASCAP licensees is not unlike that of the beneficiaries of a National Labor Relations Board order. A labor organization, even the one which filed the charges upon which the Board's proceedings were initiated, has no standing to have an employer adjudged in contempt for failure to obey a decree enforcing the order of the Board. Amalgamated Utility Workers v. Consolidated Edison Co. of New York, 309 U.S. 261, 60 S.Ct. 561, 84 L. Ed. 738 (1940). The Board, the Court found, has been provided by Congress with exclusive authority to institute proceedings for the violation of the court's decree directing enforcement. Likewise, the government is the sole proper party to seek enforcement of government antitrust decrees. The United States in instituting antitrust litigation seeks to vindicate the public interest and, in so doing, requires continuing control over the suit to determine, for instance, when modification of the decree might be a preferable alternative to attempting to enforce it through one or more contempt proceedings. Thus, the fact that the court retains jurisdiction in an antitrust action

does not mean, unless the decree should expressly provide otherwise, that persons affected by the judgment, but not parties to it, can invoke the court's jurisdiction to alter or enforce the terms of the decree.

■ Leaving the choice and power to enforce or modify in the government's hands achieves a desirable result. It forecloses the possibility that a multitude of parties with conflicting interests will become entangled in subsequent proceedings in the action, and at the same time the continuing government supervision affords those parties affected by the decree sufficient protection of their rights. The government has not been blind to the needs of the individual members of the music industry; as already noted, the original judgment against ASCAP has been modified from time to time to meet changing conditions. Furthermore, in a situation of this kind where an ASCAP licensee such as Metromedia is disputing ASCAP's computation of fees, resort can be had to Section IX (A) of the 1950 amended decree which authorizes the licensee to apply to the court for the determination of a reasonable fee where the parties are unable to reach agreement within a specified period of time. ASCAP would then have the burden of showing that its existing fee is reasonable and non-discriminatory.

■ Even if we were to find that Metromedia did have standing to maintain this contempt action against ASCAP, we would nevertheless reach the same result. It is true that a user has the right under the amended decree to a blanket license at a reasonable fee, and that, unlike the applicants in Shenandoah, Metromedia is not seeking a license whose scope or coverage differs from that contemplated by the decree

court that ASCAP was compelled under the decree to enter into licensing arrangements which differed from the standard ASCAP licenses and which were drafted to meet the licensee's individual requirements. And now Metromedia has attempted to utilize contempt proceedings.

7. Rule 71 reads in pertinent part: "When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party; * * *"

but rather is asserting a claim to a reasonable fee. However, Metromedia has no right conclusively to determine certain elements of the "fee" and then to require ASCAP, under pain of contempt, to quote a matching percentage figure. On the contrary, the decree gives ASCAP the initiative in proposing the entire formula, contemplates further negotiations if this apears unreasonable, and directs an application to the court in case of a stalemate. Thus far, it is Metromedia—not ASCAP—which has failed to follow the route marked out by the decree.

The order denying the motion to punish ASCAP for contempt is affirmed.