Mary WARREN, Plaintiff,

v.

ITT WORLD COMMUNICATIONS, INC., ITT Domestic Transmission Systems, Inc., and ITT Corporate Communication Services, Inc., Defendants.

No. 81 Civ. 1277 (JES).

United States District Court, S. D. New York.

Sept. 30, 1982.

Raymond F. Gregory, New York City, for plaintiff.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendants; Grant S. Lewis, Kimba Wood Lovejoy, Howard S. Ockman, Susan I. Littman, and Sandra Kincaid, New York City, of counsel.

## OPINION

SPRIZZO, District Judge:

Plaintiff, Mary Warren, commenced this Title VII[1] action against ITT World Communications ("Worldcom"), ITT Domestic Transmission Systems, Inc. and ITT Corporate Communication Services, Inc. ("CCS") (collectively, the "Companies") alleging sex discrimination in employment. She seeks a declaratory judgment that defendants' policies and practices discriminate against women, injunctive relief, recovery of back pay and damages. Plaintiff has moved this Court, pursuant to Fed.R.Civ.P. 23(c), to certify this action as a class action.[2]

Plaintiff first secured temporary employment with a division of defendant Worldcom in April, 1974 through the services of an employment agency. Plaintiff alleges that, although the agency advised her that she would be hired in a grade 9 position at a salary of not less than $200 per week, she was permanently hired as a "Junior Communications Analyst" at a grade 6 and a salary of $170 per week.

Plaintiff claims that, throughout the course of her employment with the Companies, she worked on the same project as male employees,[3] performing comparable

---

1. 42 U.S.C. § 2000e et seq. (1976).

2. Plaintiff also moved to amend her complaint to add as a defendant United States Transmission Systems, into which defendant CCS merged in 1979. While denying that plaintiff possesses a valid claim against any defendant, the Companies have not opposed plaintiff's motion to amend and have entered into a stipula-tion permitting the amendment, which stipulation was so ordered by the Court.

3. According to the affidavit of Paul B. Twomey, Senior Vice President of United States Telephone and Telegraph Corporation, parent of the defendant Companies, the project for which plaintiff was hired was a small, start up operation designed to investigate the potential for

and sometimes identical work, but because her supervisors, all of whom were males, refused to include in her job description all of the tasks for which she was responsible, men were assigned higher grades than she and, as a consequence, earned higher salaries.[4]

Plaintiff resigned from defendants' employ in December of 1976. She filed a complaint with the New York Division of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC"). Neither agency found reasonable cause to believe that plaintiff had been discriminated against.[5] Thereafter, the EEOC issued a right to sue letter and plaintiff commenced the instant action.

In her district court complaint, plaintiff alleges, on information and belief, that the discriminatory acts to which she was subject are part of a policy, pattern and practice designed and utilized by defendants to compensate men at higher rates than women and to hire[6] and promote men rather than women for and to better paying positions.[7] In this connection, plaintiff seeks to represent all females employed by the Companies from December 16, 1974, when she first secured permanent employment, to March 5, 1981, when the complaint in this action was filed. Defendants deny plaintiff's allegations and oppose class certification.

## A. Subject Matter Jurisdiction

As a threshold issue, defendants contend that, since plaintiff's charges filed with the NYDHR and the EEOC made no class allegations whatsoever, and since the investigation conducted by the NYDHR and

---

expansion into domestic telecommunications services. More particularly, Ms. Warren's group was formed to create and market a low cost voice communications network for business subscribers.

4. All jobs at the Companies are graded. The grade assigned determines salary range, certain fringe benefits and certain perquisites. According to the affidavit of Robert Juliano, the individual charged with administering the Companies' grading and promotion policies and the custodian of the Companies' personnel records and policy memoranda, grades are assigned to jobs in the following manner: the line supervisor drafts a job description which sets forth the minimal educational level for the position, the experience required to perform it and the tasks to be performed by the person in the position. The job description is then forwarded to the personnel department which assigns points to each category contained in the job description in accordance with job evaluation procedures. After the points are totaled, a grade is assigned accordingly. Job descriptions are written for every position except secretary.

According to Mr. Juliano's affidavit, job descriptions which are forwarded to him for grading do not set forth the name of the individual who will fill the job; rather, each has an identifying number associated with it. Mr. Juliano states that, when he assigns a grade to a new job for a prospective employee, he never knows the identity or sex of the person who will fill it. When a grade is assigned to a job to be filled by an existing employee, he generally does not know the identity or sex of the person who will fill that job.

5. According to the affidavit of Edward Mercado, District Director for the New York District of the EEOC, the EEOC and the NYDHR are parties to a work sharing agreement, authorized by 29 C.F.R. 1601.13(c), pursuant to which the filing of Ms. Warren's complaint with the NYDHR constituted the filing of a charge with the EEOC. The EEOC deferred its initial investigation to the NYDHR. Following the issuance of an order by the New York State Human Rights Appeal Board affirming a determination of no probable cause to believe that Ms. Warren had been discriminated against, the file was submitted to the EEOC for its review. According to Mr. Mercado's affidavit, the New York District of the EEOC reviews all charges and files from the NYDHR to determine whether the NYDHR proceeding was adequate. Mr. Mercado indicated that the EEOC's determination that there was no reasonable cause to believe that Ms. Warren's charges were true was based on the determination that the NYDHR investigation was found to be thorough and complete and that the record was adequate. No further investigation was made by the EEOC.

6. Plaintiff's attorney expressly disclaimed that the complaint charges discrimination in hiring. Transcript of plaintiff's deposition at 77–78. (References to the transcript of plaintiff's deposition are hereinafter cited as "Tr.___.")

7. In support of her latter contention, plaintiff has offered statistical data which reveals that, of the more than 500 offices and directorships which were filled by the Companies during the period 1974 to 1980, only one was filled by a woman.

relied upon by the EEOC[8] was limited to an investigation of plaintiff's individual grievances, this Court lacks subject matter jurisdiction over the purported class claims. In support of their contention, the Companies have offered the affidavit of George C. Findlay, Regional Director of the NYDHR, which affidavit states that plaintiff's complaint was determined as an individual complaint and not as a class action.

Defendants' contention must be rejected. As the Second Circuit has stated in *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980),

> We look not merely to the four corners of the often inarticulately framed charge, but take into account the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (citations omitted)

Mr. Findlay's affidavit asserts, *inter alia,* that the NYDHR reviews each individually filed complaint to gather evidence of discrimination against the individual *and pattern and practice evidence in support of the charge made by the individual.* Since the agency investigates individual complaints with a view toward gathering evidence of a pattern and practice of discrimination, and

since such evidence may support a claim of class based discrimination, the Court finds that an investigation of classwide unlawful employment practices could reasonably have been expected to grow out of plaintiff's charges. Therefore, the Court does not lack subject matter jurisdiction.[9]

### B. *Class Certification*

■ To qualify as a class representative, plaintiff must demonstrate that all the prerequisites of Fed.R.Civ.P. 23 have been satisfied, to wit, that (1) the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that plaintiff's claims are typical of the claims of the class; and (4) that plaintiff will fairly and adequately protect the interests of the class.[10] The Supreme Court has admonished that careful attention to each of these requirements is indispensable. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

■ Plaintiff's contention that her claim is typical of those who are alleged to have been discriminatorily denied promotions must be rejected.[11] Plaintiff never applied for a promotion.[12] Indeed, she never even

---

8.  See n.5, *supra.*

9.  The Court has examined the form of complaint utilized by the NYDHR and the EEOC and observes that it contains no notice, reference, direction or instruction with respect to the assertion of class versus individual claims. Unwary and unsophisticated complainants should not be precluded from acting as class representatives simply because they have failed to describe their claims as class oriented, provided, of course, that the investigation arising out of those claims could reasonably be expected to encompass class issues.

10.  Fed.R.Civ.P. 23(b) provides, *inter alia,*
    > An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition [the action falls within one of the categories set forth in subdivision (b) ].
    Plaintiff here relies on Fed.R.Civ.P. 23(b)(2) which provides: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class

as a whole." Ms. Warren seeks both injunctive and declaratory relief.

11.  Plaintiff's class action complaint, paragraph 4.

12.  Plaintiff argues that, had her job description been rewritten to reflect its proper grade, as she repeatedly requested, she would thereby have been promoted to a better paying job. Even under this view, plaintiff's claim is not typical of the class claims since plaintiff is not seeking to represent class members who were denied promotions because their job descriptions were discriminatorily written. Rather, the facts set forth in support of plaintiff's class allegations clearly contemplate the representation of individuals who applied for and were discriminatorily denied promotions to different or more responsible positions. For example, plaintiff alleges that secretaries complained that they could not obtain promotions and transfers to jobs filled by men although they had comparable education and employment backgrounds, that men hired in clerical positions were usually promoted within six months

made an effort to determine whether there were better paying positions for which she was qualified.[13] Moreover, her complaint falls far short of demonstrating that the Companies operated under a general policy of discrimination and that she was discriminated against in the same general fashion as those claimed to have been discriminatorily denied promotions.[14] Therefore, it cannot be said that she possesses the same interest or has suffered the same injury as those class members who are or have been the victims of discriminatory promotion practices. *General Telephone Company v. Falcon,* —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

■ There remains for consideration plaintiff's assertion that her claim is typical of the class claims because, as a result of the Companies grading policies, she was not paid compensation equal to that paid to males employed in the same or a similar position. In support of her class allegations in this regard plaintiff offers the following facts: women were given lower salary grades than men although they were doing the same or similar work; women were frequently given lower grades than men when first hired although they had comparable qualifications; men were commonly

paid the maximum salary and women the minimum salary within a grade; and those women hired for technical positions were not paid as much as men employed in such positions.[15]

In *General Telephone Company v. Falcon* the Supreme Court observed that there is a wide conceptual gap between (a) an individual's claim of discrimination and an unsupported allegation that the employer engages in a policy of discrimination and (b) the existence of a class of persons who have suffered the same injury as that individual such that the individual and class claims will share common questions of law or fact and that the individual's claim will be typical of the class. *Id.* 102 S.Ct. at 2371. The question is whether plaintiff has bridged that gap. The Court finds that she has not.

Plaintiff cannot identify any other woman whose job was discriminatorily described[16] or who sought to have her job description re-written. She cannot recall the name of any other woman who was compensated at a lower rate than men doing the same or similar work[17] or who was given a lower grade than men with comparable qualifications when hired.[18] She cannot name any other female employee who was paid the minimum salary within a grade when hired while males were paid the maximum.[19] In short, plaintiff cannot provide specifics with

---

whereas women remained in such positions for years and that few women held or were promoted to managerial or high level positions. Plaintiff's Reply Memorandum at 10–11 (hereinafter "Reply Memorandum").

**13.** Tr. at 123–24.

**14.** In the instant case it cannot be said that plaintiff's statistical showing provides significant proof that the Companies operated under a general policy of discrimination. See n.7 *supra.* Defendants point out that the 500 offices and directorships filled between 1974 and 1980 were, in fact, filled by only 78 persons who were generally senior people with extensive experience in the telecommunications field and who began their careers in the 1940's, 1950's and 1960's when the number of qualified women in the field was minimal. In this regard, the Court observes that plaintiff has omitted to offer evidence regarding the presence of

qualified women in the relevant labor market at the time these positions were filled, and in the absence of such data, plaintiff's raw statistics are of dubious value. *Hazelwood School District v. United States,* 433 U.S. 299, 308 n.13, 97 S.Ct. 2736, 2742 n.13, 53 L.Ed.2d 768 (1977). Moreover, there is no evidence to support the conclusion that discrimination in promotion practices and discrimination with respect to compensation was manifested in the same general way.

**15.** Reply Memorandum at pp. 10–11.

**16.** Tr. at 124, 127.

**17.** *Id.* at 128–130, 146–47, 153.

**18.** *Id.* at 109, 118, 121, 153.

**19.** *Id.* at 121–22.

respect to any of the facts which she asserts support an inference that there exists a class in need of protection.[20]  Finally, plaintiff has not offered the affidavit of any other woman who claims to have been discriminated against in a similar manner. Since plaintiff has failed to carry her burden under Fed.R.Civ.P. 23, her motion for class certification is denied.

SO ORDERED.

---

[20]. The Supreme Court has indicated that, evidence that a putative class representative was discriminated against with respect to promotion does not necessarily justify the additional inferences that (1) this discriminatory treatment is typical of a defendant's promotion practices; (2) that defendant's promotion practices are motivated by a policy of proscribed discrimination; or (3) that any policy of proscribed discrimination is reflected in a defendant's other employment practices in the same way it is manifested in the promotion practices. *General Telephone Company v. Falcon,* 102 S.Ct. at 2371.  In short, plaintiff's allegation that the Companies' grading practice is discriminatory rests entirely on her allegations that she has been discriminated against individually.  This is clearly not sufficient.