Lewis A. VIRGO, Plaintiff,

v.

LOCAL UNION 580, Defendant.

No. 84 Civ. 1592 (EW).

United States District Court,
S.D. New York.

Aug. 7, 1985.

Kipp Elliott Watson, New York City, for plaintiff.

Colleran, O'Hara, Kennedy & Mills, P.C., Garden City, N.Y., for defendant; John F. Mills, Vincent F. O'Hara, Garden City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Lewis Virgo is a black man of Jamaican origin. In 1972, he sought membership in defendant Local Union 580 of the International Association of Bridge, Structural, and Ornamental Iron Workers ("Local 580" or the "Union") by taking and successfully completing a journeyman's test. Although Virgo passed the test in 1972, he was not admitted as a member of the Union until 1980, a delay he attributes to racially discriminatory admission practices by defendant.

On November 10, 1976, Virgo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which referred his complaint to the New York State Division of Human Rights (the "Division"). Although the Division determined after investigation that there was probable cause to believe defendant had engaged in the unlawful discriminatory practices complained of, a State Administrative Law Judge ("ALJ") dismissed the complaint upon the ground that a separate action by the EEOC against Local 580 (the "EEOC action") and the consent judgment entered therein ousted the division of jurisdiction over the matter. The ALJ's order of dismissal was affirmed on appeal to the State Human Rights Appeal Board and on February 10, 1984 the EEOC issued Virgo a notice of right to sue. On March 5, 1984, plaintiff commenced this action pro se, charging defendant with employment discrimination on the basis of his race, col-

or, and national origin in violation of Title VII of the Civil Rights Act of 1964.[1]

Local 580 asserts that the delay in Virgo's admission can be explained by reference to the EEOC action and the consent judgment therein. In 1971, the Government, for whom the EEOC was later substituted as plaintiff, commenced an action against Local 580 and other New York City construction unions (later severed) seeking injunctive relief for alleged racially discriminatory practices concerning admission, referral, and other matters relating to employment in the building trade. As a result, defendant asserts, it entered into negotiations with the United States Attorney's Office and the EEOC regarding the admission of minority applicants to Local 580, during which time the admission of all applicants who had taken and passed the journeyman's test in the years 1971 through 1975, regardless of their race, color, or national origin, was stayed. Thereafter, on July 21, 1978, a consent judgment was entered in the EEOC action which provided, inter alia, that eighteen nonwhites who had taken and passed the journeyman's test in the years 1971 through 1975, who were physically fit, and who had responded to a joint mailing previously conducted by Local 580, the EEOC, and the U.S. Attorney's Office would be invited to join the Union, with selection priority based upon the dates of their examinations and receipt of their applications.[2]

According to defendant, the joint mailing, which was conducted in late 1975 and early 1976, was based upon a list of names and addresses compiled by the Union from the membership applications submitted by the applicants. Virgo was on the list but did not respond to the mailing because, as the Union later learned, he had changed his address several times without notifying defendant or the U.S. Attorney's Office and thus had not received the mailing. Defendant asserts that the U.S. Attorney's Office, at the Union's urging, thereafter made a second mailing to Virgo and others who had not received the first mailing but insisted that no one who responded to the second mailing could be admitted to Local 580 until after all those who had responded to the first mailing were admitted. In sum, the Union asserts that Virgo's admission was delayed from 1972 to 1980 by a combination of factors having nothing to do with alleged discriminatory conduct on its part: that due to negotiations in the EEOC action, the admission of all applicants who passed the journeyman's test in the years 1971 to 1975 was delayed until after the consent judgment was entered in 1978, and that Virgo's admission was delayed still further because he failed to apprise the Union or the United States Attorney's Office of his whereabouts and because the latter then insisted that admission priority be given to those who had responded to the first mailing.

Defendant now moves for summary judgment upon the grounds that Virgo's Title VII claim is time-barred, fails to state a prima facie case of unlawful discrimination, and is precluded under the doctrine of res judicata by the consent judgment entered in the EEOC action. After defendant filed its motion, plaintiff retained an attorney and cross-moved to amend his pro se complaint. His proposed amended complaint repeats the Title VII claim, though modifying it to include a charge that during the period in question the Union also engaged in discriminatory referral practices. The proposed amended complaint also asserts a new claim under 42 U.S.C. § 1981, charging that defendant failed to fulfill its contractual obligation under the consent judgment, of which Virgo claims to be an intended third party beneficiary, by failing to provide the United States Attorney's Office with Virgo's then-current mailing address. In sum, as set forth in the proposed amended complaint, the Title VII claim focuses on alleged discriminatory ad-

1. 42 U.S.C. §§ 2000e to 2000e–17.

2. *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers,* No. 71 Civ. 2877, Consent Judgment (S.D.N.Y. July 20, 1978).

mission and referral practices from roughly 1972 to 1978, while the new section 1981 claim focuses on the Union's alleged failure to ensure that Virgo received the first joint mailing which became the basis for priority admission under the consent judgment after 1978. The Union opposes the proposed amendment as futile, arguing that the Title VII claim would still be time-barred; that the demand for damages, which are unavailable under Title VII, should be stricken; and that the new section 1981 claim would be invalid because a consent judgment is not enforceable by a third party beneficiary in a collateral proceeding. It asserts that plaintiff should not be permitted to amend his pro se complaint and that its summary judgment motion directed thereto should be granted.

 Leave to amend a complaint should be freely given where, as here, there is no allegation that prejudice would result,[3] and this is particularly so when the original complaint was drawn by the plaintiff without the assistance of counsel.[4] Nevertheless, leave should not be granted if the proposed amendment would be futile.[5] A plaintiff should not be permitted to defeat a pending summary judgment mo-

tion merely by proposing futile changes or additions to his complaint, and this, too, applies with respect to pro se litigants. As this Court has stated in the past, "[a]lthough pro se civil rights complaints must be viewed with some lattitude, liberal construction of pleadings should not be permitted to override completely the rights of defendants."[6] In view of these principles, plaintiff's cross-motion for leave to serve and file the proposed amended complaint should be granted, but only to the extent it can withstand the legal challenges defendant directs to it.[7]

## THE TITLE VII CLAIM

As already noted, the proposed amended Title VII claim charges that defendant failed to admit plaintiff or to refer him for employment on the same basis as whites. Defendant challenges this claim on several grounds. First, it argues that the claim is time-barred because Virgo has failed to allege a discriminatory act by defendant that occurred within 300 days prior to December 2, 1976, the date he filed charges with the EEOC and the Division, as required by 42 U.S.C. § 2000e–5(e).[8] Accord-

3. *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); *Fustok v. Conti-commodity Servs., Inc.,* 103 F.R.D. 601, 603–04 (S.D.N.Y.1984); Fed.R.Civ.P. 15(a).

4. See *Haines v. Kerner;* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984); *Valente v. Moore Business Forms, Inc.,* 596 F.Supp. 1280, 1287 (D.Vt.1984); *Mason v. Connecticut,* 583 F.Supp. 729, 730–31 (D.Conn.1984).

5. See *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Fluor Corp.,* 654 F.2d at 856; *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.,* 558 F.Supp. 1042, 1044 (D.Utah 1983); *Greenfield v. Kanwit,* 87 F.R.D. 129, 132 (S.D.N.Y.1980).

6. *Morpurgo v. Board of Higher Educ.,* 423 F.Supp. 704, 713 (S.D.N.Y.1976).

7. Since the Title VII claim in the original complaint is renewed in the proposed amended complaint (with a new charge of referral violations), defendant's challenges to this claim are taken to include those it presented in its sum-

mary judgment motion as well as those it presented in its opposition to plaintiff's cross-motion to amend. Defendant's challenges to the new section 1981 claim, however, are taken to include only those it presents in opposition to the cross-motion. The factual premise of this claim—defendant's alleged failure to provide the authorities with plaintiff's correct mailing address—was not alleged in the original complaint and was not addressed by defendant in its summary judgment motion directed to the original complaint.

8. Defendant's characterization of the filing dates and the limitations period is not correct. According to the proposed amended complaint and the exhibits thereto, the EEOC received Virgo's charge of discrimination on November 10, 1976 and referred it to the Division on or about December 2, 1976. Since the state proceedings did not terminate until several years later, on December 30, 1983, when the State Human Rights Appeal Board affirmed the ALJ's dismissal of the complaint, the applicable limitations period is 300 days but the charge of discrimination was not "filed" with the EEOC for statutory purposes until 60 days after the state proceedings were commenced—that is, not

ing to defendant, the only discriminatory act alleged by Virgo is the denial of Union membership after he passed the journeyman's test in 1972, over four years before he filed charges with the EEOC and the Division. Virgo has alleged, however, that the Union discriminated against him on a continuing basis from 1972 until he filed his charges in 1976 and thereafter as well. For instance, the proposed amended complaint charges that from 1972 to 1978 Virgo made numerous requests for a union book that were "systematically denied by officers of defendant" and that from 1971 to 1978 he obtained occasional·employment at defendant's hiring hall but due to defendant's referral practices was denied other available and more desirable employment opportunities. An allegation of continuing discrimination in admission and referral practices at least up to the time Virgo filed charges may reasonably be inferred from the foregoing. With respect to admission practices, this is especially so in light of the complaint Virgo filed with the Division (Exhibit B to the proposed amended complaint), which charges that "[f]rom 1973 till the present I have continuously asked for a union book and as of July 1976 Mr. Raymond Cody, President and Business Agent[,] has refused to give me a union book."

■■■ To avoid the Title VII time-bar by alleging a continuing violation, a plaintiff must allege a present violation, not merely a present adverse impact of a past violation.[9] A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days—here alleged by defendant to be 300 —after the last occurrence of an instance of that policy. Furthermore, where an illegal policy is so maintained, relief for injuries sustained even before the beginning of the limitations period is appropriate.[10] Drawing all reasonable inferences in plaintiff's favor, as must be done,[11] the proposed amended complaint alleges that roughly from 1972 to 1978 Virgo repeatedly sought employment opportunities and was repeatedly denied them because of discriminatory admission and referral practices by the Union. If Virgo can prove that he actually sought and was denied admission and referral during the limitations period, which falls in 1976,[12] then his Title VII claim is timely. However inartfully pleaded, the proposed amended complaint does allege a continuing violation of Title VII sufficient to avoid the statutory time-bar of 42 U.S.C. § 2000e–5(e) at this stage of the litigation.

■■■ As to the alleged referral violations, defendant argues that this charge was made for the first time in the proposed amended complaint and therefore constitutes a new claim under Title VII that was not the subject of a complaint filed with the EEOC or the Division. Consequently, defendant asserts, the requirements of 42

until 60 days after deferral of the charge by the EEOC to the Division. Thus, the charge Virgo submitted to the EEOC was not timely unless the alleged discriminatory employment practice occurred within 240 days prior to the deferral date of December 2, 1976. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980); *Reinhard v. Fairfield Maxwell, Ltd.,* 707 F.2d 697, 700 n. 4 (2d Cir.1983); 42 U.S.C. § 2000e–5(c), (e); 29 C.F.R. § 1601.13(a)(5)(ii)(B). Although defendant refers to the limitation period as 300 days prior to the deferral date rather than 240 days, the discrepancy is of no consequence in view of the continuing nature of the discrimination alleged in the proposed amended complaint, discussed hereafter.

9. *See Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 68 L.Ed.2d 431

(1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 108 (2d Cir.1978); *Ganguly v. New York State Dep't of Mental Hygiene,* 511 F.Supp. 420, 427 (S.D.N.Y.1981).

10. *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978); *see Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1981); *Egelston v. State University College at Geneseo,* 535 F.2d 752, 755 (2d Cir.1976); *Noble v. University of Rochester,* 535 F.2d 756, 758 (2d Cir.1976).

11. *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985).

12. *See* note 8 supra.

U.S.C. § 2000e–5(e) have not been met with respect to the referral claim. Although the charges Virgo filed with the EEOC and the Division do not mention referral practices, this does not end the matter. As our Court of Appeals has emphasized,

> [w]e look not merely to the four corners of the often inarticulately framed charge, but take into account the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Accordingly, we have previously construed Title VII charges to include allegations of "continuing discrimination" that occur "even after" the complaint is filed.[13]

In the instant case, the EEOC had sufficient notice of and opportunity to investigate the claimed referral violations. According to the consent judgment, the complaint filed in the EEOC action sought injunctive relief against Local 580 and others as to "any racially discriminatory employment, membership, or referral practice" and was broadly addressed to the "terms, conditions or privileges of employment of nonwhites in the building trade in which the members of Local 580 are engaged," including admission and referral. Since the EEOC was already concerned that Local 580 engaged in discriminatory referral practices generally—indeed, at the very time Virgo filed his charge, the agency allegedly was negotiating a consent judgment that included lengthy and detailed provisions governing the Union's referral practices—the referral violations alleged by Virgo are not likely to have caught the EEOC by surprise. They are within the scope of the EEOC investigation that reasonably could be expected to grow out of the charge Virgo filed with the agency. The referral violations in the proposed amended complaint do not constitute a separate Title VII claim for purposes of 42 U.S.C. § 2000e–5(e).[14]

Defendant next contends that Virgo has failed to plead a prima facie case of unlawful discrimination. Although the proposed amended complaint, when read in the light most favorable to plaintiff, meets the liberal standard for a prima facie case of racial discrimination set forth in *McDonnell Douglas Corp. v. Green*,[15] defendant asserts that all applicants for Union membership who passed the journeyman's test in the years 1971 to 1975, regardless of their race, color, or national origin, were denied admission until the consent judgment was entered in the EEOC action in 1978. (This contention, even if true, would not invalidate Virgo's claim of referral discrimination.) Virgo disputes this contention and asserts that at least thirty persons who passed the journeyman's test in 1972, only one or two of whom are nonwhite, were admitted to the Union prior to 1978. Although his belief is premised on hearsay statements, he seeks an opportunity to make discovery in order to substantiate his claim. More importantly, defendant has provided no basis for its claim that the delay in Virgo's admission from 1972 to 1978 was related to negotiations in the EEOC action, other than its statement that this was the case. It is significant that the Union makes no affirmative representation that the United States Attorney's Office or the EEOC actually consented to or approved the delay in admissions for the entire period in question. Whether such consent or approval, if any, amounted to a genuine endorsement of the Union's admission practices in general between 1972 and 1978, and whether the delay in Virgo's admission in particular during this period was attributable to an unlawful discriminatory motive on defendant's part, are issues

---

13. *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979) (citations omitted) (quoting *American President Lines*, 571 F.2d at 107 n. 10, and *Noble*, 535 F.2d at 758), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

14. *Cf. Mohasco Corp.*, 602 F.2d at 1090–91; *American President Lines*, 571 F.2d at 107 & n.

10; *Obradovich v. Federal Reserve Bank*, 569 F.Supp. 785, 789 (S.D.N.Y.1983); *Warren v. ITT World Communications, Inc.*, 95 F.R.D. 425, 428 (S.D.N.Y.1982).

15. 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

of fact that cannot be resolved solely on the basis of the proposed amended complaint. Such resolution must await a trial or, at least, a summary judgment motion directed to the proposed amended complaint after plaintiff has had an opportunity for discovery.

■■■ Defendant's final attack on the Title VII claim is based upon the doctrine of res judicata. The Union argues that the claim is identical to those asserted by the EEOC in its action against Local 580, that Virgo was included in a group for which the EEOC sought relief, and that the consent judgment entered in that action is a prior final judgment on the merits of those claims. At the outset, it should be emphasized that Virgo's Title VII claim may not be identical to those asserted by the EEOC in its action. Whereas Virgo seeks relief for discrimination against him personally, the EEOC's complaint, as described in the consent judgment, alleged that "Local 580 was engaged in a pattern and practice of resistance to the full enjoyment by non-whites of rights secured to them by [Title VII]." A claim of a union-wide pattern and practice of discrimination and a claim of discriminatory treatment of an individual applicant are not identical, and an adjudication of one is not necessarily an adjudication of the other.[16]

■■■ Even assuming that Virgo's Title VII claim is identical to those covered by the consent judgment, however, defendant's res judicata attack is without merit. In *General Telephone Co. v. EEOC*,[17] a defendant in an EEOC enforcement action under Title VII urged the Supreme Court to subject the action to the requirements of Fed.R.Civ.P. 23 in order to secure a judgment in the EEOC's suit that would be binding upon all individuals with similar grievances in the class that might have been certified under the Rule. The Court declined to do so, explaining that

[t]he 1972 amendments retained the private right of action as "an essential means of obtaining judicial enforcement of Title VII," while also giving the EEOC broad enforcement powers. In light of the "general intent to accord parallel or overlapping remedies against discrimination," we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all "class" members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer. This is especially true given the possible differences between the public and private interests involved.[18]

Thus, a consent judgment in an EEOC enforcement action does not preclude an individual who was not a party to the action from instituting a separate Title VII action alleging discrimination that was the subject of the EEOC's suit.[19]

■■■ This rule does not mean the courts are powerless to prevent undue hardship to a defendant who as a result might be subjected to multiple lawsuits for the same alleged wrong. When the EEOC has prevailed in its action, the Justices emphasized, the Court may reasonably require any individual who "claims under" its judgment to relinquish his right to bring a separate private action. They also noted that an acceptance of the benefits under an EEOC-negotiated settlement could be drafted to provide for a similar relinquish-

---

**16.** See *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *Edwards v. Boeing Vertol Co.*, 717 F.2d 761, 766–67 (3d Cir.1983), *cert. granted and vacated*, —— U.S. ——, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984) (remanded for further consideration in light of *Cooper*, 104 S.Ct. 2794).

**17.** 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

**18.** *Id.* at 332–33, 100 S.Ct. at 1707–08 (citations omitted) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45, 47, 94 S.Ct. 1011, 1018, 1019, 39 L.Ed.2d 147 (1974)).

**19.** See *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201, 1203–04 (2d Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973); *EEOC v. Bethlehem Steel Corp.*, 583 F.Supp. 230, 234 (W.D.N.Y.1984); *see also Meyer v. MacMillan Publishing Co.*, 526 F.Supp. 213, 217 (S.D.N.Y.1981).

ment.[20] Thus, the question here is whether the consent judgment, by its terms, precludes those who have "claimed under" it—for instance, by accepting Union membership pursuant to the affirmative action plan established thereby—from instituting separate actions against Local 580 based upon the alleged discrimination covered by the consent judgment. While defendant emphasizes that Virgo had an opportunity to object to the consent judgment but failed to do so and instead took advantage of the opportunity it provided to join the Union, defendant has not cited any provision of the consent judgment, or any order of the Court that entered the judgment, that requires him to relinquish his right to commence a Title VII action if he "claims under" the judgment. Thus, absent any evidence that Virgo and Local 580 entered into a voluntary settlement expressly conditioned upon waiver of Virgo's cause of action under Title VII, the instant action is not precluded by the consent judgment.[21]

Accordingly, with respect to the Title VII claim, plaintiff's cross-motion for leave to serve and file the proposed amended complaint referred to herein is granted, with the following exception. The demand for general and punitive damages, as distinct from a demand for back pay or other equitable relief available under Title VII, is stricken.[22] Defendant's summary judgment motion directed to the original complaint is denied as moot.

### THE SECTION 1981 CLAIM

As already noted, the proposed amended complaint adds a new cause of action under 42 U.S.C. § 1981 which focuses on the al-

leged fact that Virgo was not contacted about admission to the Union pursuant to the consent judgment until the second mailing was conducted, thereby delaying his admission beyond 1978. Virgo alleges that under the terms of the consent judgment defendant was permanently enjoined from engaging in racially discriminatory conduct with respect to admissions and agreed to perform certain record keeping activities designed to promote a fair and orderly admission of those who passed the journeyman's test in prior years, including 1972; that he was an intended third party beneficiary of the consent judgment; and that, by transmitting false information to the United States Attorney's Office and the EEOC as to his address and whereabouts, defendant breached its obligations under the consent judgment to ensure his timely admission to Local 580.

Defendant attacks the sufficiency of this claim upon the basis of the Supreme Court's statement in *Blue Chip Stamps v. Manor Drug Stores*[23] that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." The *Blue Chip* decision, however, and those cited therein in support of the quoted rule, involved consent decrees entered in antitrust cases. As to consent decrees entered in civil rights cases, the weight of authority indicates that different rules apply, that in general those whom the parties to a consent decree intended to be benefited thereby may enforce the decree in a separate action.[24] In-

---

**20.** *General Telephone,* 446 U.S. at 333 & n. 15, 100 S.Ct. at 1708 & n. 15.

**21.** *Cf. Gardner-Denver Co.,* 415 U.S. at 52 & n. 15, 94 S.Ct. at 1021.

**22.** *See Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 374–75, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979); *Davidson v. Yeshiva University,* 555 F.Supp. 75, 80 (S.D.N.Y. 1982); *Staples v. Avis Rent-A-Car System, Inc.,* 537 F.Supp. 1215, 1220 (W.D.N.Y.1982); *Schick v. Bronstein,* 447 F.Supp. 333, 338 (S.D.N.Y. 1978).

**23.** 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975) (citing *United States v. Armour & Co.,* 402 U.S. 673 (1971), and *Buckeye Co. v. Hocking Valley Co.,* 269 U.S. 42, 46 S.Ct. 61, 70 L.Ed.2d 155 (1925)).

**24.** *See South v. Rowe,* 759 F.2d 610, 612 & n. 1 (7th Cir.1985) (current inmate may intervene in action commenced by former inmate to improve prison conditions and enforce consent decree since he is intended third party beneficiary of decree entered therein); *Jones v. Local 520, Int'l Union of Operating Eng'rs,* 603 F.2d 664, 666 (7th Cir.1979) (consent decree in Government civil rights action against union

deed, the Court of Appeals for the Seventh Circuit has held that union members who sought to recover on the basis of beneficiary rights conferred by a consent decree entered in a separate civil rights action commenced by the Government against the union, of which rights the members allegedly were deprived on account of their race, stated a cause of action under section 1981.[25]

■ ■ In the instant case, the consent judgment obligates the Union to adopt an affirmative action program designed to eliminate any alleged discriminatory practices concerning nonwhite membership. It expressly provides that eighteen nonwhite persons who passed the journeyman's test in the years 1971 to 1975, who are physically fit, and who responded to the joint mailings shall be admitted to the Union. It also obligates the Union to maintain certain information about members and permitmen, including their addresses. Thus, plaintiff is a member of a class expressly designated in and benefited by the consent judgment and has beneficiary rights thereunder.[26] Since the consent judgment was entered in his favor, he may, pursuant to Fed.R.Civ.P. 71, enforce obedience to it by the same process as if he were a party to the EEOC action.[27] Thus, if the Union deprived Virgo of these beneficiary rights

because of his race, as he alleges, he may assert a cause of action under 42 U.S.C. § 1981.

Accordingly, as to the new section 1981 claim, plaintiff's motion for leave to serve and file the proposed amended complaint referred to herein is granted.

So ordered.

enforceable by union members), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 669, 62 L.Ed. (1980); *Lasky v. Quinlan,* 558 F.2d 1133, 1137 (2d Cir. 1977) (plaintiffs, who are no longer in custody of defendant prison officials, cannot enforce consent decree entered in their civil rights action, but current inmates, though nonparties, may enforce decree in separate action); *see also Rule v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 396,* 423 F.Supp. 373, 381 (E.D.Mo.1976) (union member could not enforce consent decree entered in Government's enforcement action against union because decree vested enforcement right exclusively in Government), *aff'd in part, vacated in part,* 568 F.2d 558, 565 n. 10 (8th Cir.1977) (as modified on denial of rehearing, Feb. 21, 1978) (affirming ruling on enforcement of consent decree); *cf. In re Spong,* 661 F.2d 6, 10–11 (2d Cir.1981) (stipulation and order of settlement in divorce case providing for payment of ex-spouse's counsel fees enforceable by ex-spouse, or her counsel as third party beneficiary); *Byrd v. Long Island Lighting Co.,* 565 F.Supp. 1455,

1470 (E.D.N.Y.1983) (member of designated class to be benefited by private Title VII conciliation agreement between EEOC and employer could enforce agreement in Title VII action).

25. *See Jones,* 603 F.2d at 666; *see also Jones v. Local 520, Int'l Union of Operating Eng'rs,* 524 F.Supp. 487, 490, 493 (S.D.Ill.1981) (construing Court of Appeals's ruling).

26. *Compare South,* 759 F.2d at 612; *Jones,* 603 F.2d 664; *Byrd,* 565 F.Supp. at 1469–70; *cf. Owens v. Haas,* 601 F.2d 1242, 1250 (2d Cir.) (determining who is a third party beneficiary of Government contract under federal law), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *United States v. ASCAP,* 341 F.2d 1003, 1008 (2d Cir.) (antitrust decree not made in favor of plaintiff), *cert. denied,* 382 U.S. 877, 86 S.Ct. 160, 15 L.Ed.2d 119 (1965).

27. *See Lasky,* 558 F.2d at 1137; *cf. ASCAP,* 341 F.2d at 1008.