George H. WILLIAMSON, Jr., et al.,
Plaintiffs-Appellants,

v.

BETHLEHEM STEEL CORPORATION
et al., Defendants-Appellees.

No. 58, Docket 72–1420.

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1972.

Decided Nov. 3, 1972.

1202

Russell Specter, Washington, D. C. (Paul J. Spiegelman, Washington, D. C., Richard Lipsitz and Carmin R. Putrino, Buffalo, N. Y., of counsel), for appellants.

Martin Slate, Washington, D. C., for Equal Employment Opportunity Commission, amicus curiae.

Ralph L. McAfee, New York City, for defendant-appellee Bethlehem Steel Corporation.

Michael H. Gottesman, Washington, D. C. (Thomas Krug, Buffalo, N. Y., of counsel), for Union defendants-appellees.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

Appellants are six black employees at appellee Bethlehem Steel Corporation's (hereinafter "Bethlehem") Lackawanna, New York, plant. All six have at least 15 years' seniority. They filed a motion below seeking a preliminary injunction against Bethlehem and the named appellee · locals of the United Steelworkers (hereinafter collectively "the Union") enjoining the recall of laidoff employees on what they claim is a racially discriminatory basis. The complaint proper alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as amended, 1972 U.S.Code Cong. & Admin.News, p. 814 et seq., and of the Civil Rights Act of 1866, 42 U.S.C. § 1981, in regard not only to layoff recalls but also to hiring, referral, transfer, assignment procedures, and advancement opportunities. The district court denied the appellants' motion for a preliminary injunction on the ground that in a previous case brought by the Attorney General against the defendants in this circuit, United States v. Bethlehem Steel Corp., 312 F.Supp. 977 (W.D.N.Y.1970), modified, 446 F.2d 652 (2d Cir. 1971), the relief sought here was considered but not granted. We reverse and remand to the district court for findings and an order in accordance with this opinion.

The district court proceeded upon the erroneous assumption that it was bound as against these appellants by the modified order in the earlier Title VII case. That case involved seniority and transfer provisions of the collective bargaining agreements between Bethlehem and the Union which both the trial and appellate courts found discriminatory, one form of discrimination consisting of assignment

in the past of black employees to 11 of the less desirable departments of the Lackawanna plant. The seniority system, based upon departmental rather than plantwide service, was found to have helped perpetuate the discrimination by "locking in" black employees to the less desirable departments and jobs. The question of recall from layoff was touched upon only to clarify that it was an issue which was not decided in that case. The Attorney General had originally urged that plant seniority be used "for all purposes," although the specific relief sought related only to retention of earlier pay rates and seniority carry-over for employees transferring from one department to another and then only in the situation of a vacancy occurring in the other department. In Bethlehem's and the Union's answering briefs on appeal they had urged that use of a plantwide seniority system would result in permitting laidoff black employees to move into jobs they had never held before the layoff ahead of both black and white employees who had held such jobs. Meeting this argument, the Government in its reply brief on appeal contended that the relief it sought related only to vacancies caused by death, retirement or transfer and that it would be acceptable if on recall after layoff "all employees shall assume the same positions relative to each other as they held immediately prior to the layoff." Reply Brief for the Appellant at 19, United States v. Bethlehem Steel Corp., 446 F.2d 652 (2d Cir. 1971). In other words, the Government expressly did not seek the very relief .plaintiff-appellants seek here.

In the court's opinion Judge Feinberg noted that most of Bethlehem's and the Union's concerns over the effect of seniority carry-over could be "met by the carefully limited order suggested by the Government", 446 F.2d at 663, and, after

noting the Government's suggested exception for recall after layoff, pointed out that the suggested exception would limit "the unsettling effects of seniority carryover during periods of layoff and recall." *Id.* at 664. The court's order adopted the Government's suggestion. *Id.* at 666. It is thus true as Judge Henderson said below that this court "considered" the question of recall after layoff, but only to point out that in accordance with the Government's "moderate" prayer for relief, *id.* at 659, the question was not in contention. Indeed, the United States, now acting through the Equal Employment Opportunity Commission ("EEOC") as amicus curiae, takes the position that this court should grant the relief the United States previously *did not seek.*[1] The EEOC goes on to point out that between 1968 and 1972 Bethlehem laid off about 50 per cent of its workers, so that arguably a change of circumstance has occurred since suit was first instituted by the Government and new relief is justified. We need not, however, rest our decision on that narrow ground.

■ For purposes of res judicata or collateral estoppel, the private citizens in this case are not bound by the Attorney General's action in the former case since they neither were parties to it, NLRB v. Lannom Manufacturing Co., 226 F.2d 194, 199 (6th Cir. 1955), rev'd on other grounds sub nom. Amalgamated Meat Cutters v. NLRB, 352 U.S. 153, 77 S.Ct. 159, 1 L.Ed.2d 207 (1956), nor have interests such as to be in privity with the Attorney General. *Cf.* Trbovich v. United Mine Workers, 404 U.S. 528, 538–39, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (intervention by union members permitted in Labor-Management Reporting and Disclosure Act litigation brought by the Secretary of Labor). Therefore, the judgment in the previous case does not

---

1. The Assistant Attorney General for Civil Rights on July 16, 1971, wrote the Union's counsel that the Government's agreement to interpretation of the district court order in accordance with the suggestion it had made on appeal "does not foreclose our right to seek such relief in other cases of this kind." Letter from David L. Norman to Michael H. Gottesman, in Appellants' Appendix at 27a.

have conclusive force here. *See* Restatement of Judgments § 93 et seq. (1942); 1B J. Moore, Federal Practice ¶ 0.411[1] (2d ed. 1965). *See also* Hartford Accident & Indemnity Co. v. Jasper, 144 F.2d 266, 267 (9th Cir. 1944).

Nor, for the reasons explained above—namely, that the Government did not seek relief in the case of recall after layoff—does the earlier decision bind us on the basis of stare decisis. O'Donoghue v. United States, 289 U.S. 516, 550, 53 S.Ct. 740, 77 L.Ed. 1356 (1933); Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821); 1B J. Moore, *supra* at ¶ 0.402[2].

Under Title VII since its inception, moreover, the individual has played a significant role in its enforcement. Jenkins v. United Gas Corp., 400 F.2d 28, 32 (5th Cir. 1968). This is equally true after the amendment of Title VII by the Equal Employment Opportunity Act of 1972, 1972 U.S.Code Cong. & Admin.News, p. 814 et seq. While the 1972 amendments authorize the Equal Employment Opportunity Commission to bring a Title VII suit in the name of the Government, individuals party to Commission conciliation proceedings in the same action may intervene in such suits, and in those brought by the Attorney General, *id.* § 706(f)(1), 1972 U.S.Code Cong. & Admin.News pp. 817–18,[2] and presumably individuals not party to the Commission proceedings may institute a suit despite any legal action taken by the Commission or the Attorney General.

The purpose of permitting the individual who has been discriminated against to seek relief where the Government has omitted to do so—possibly for reasons such as its lack of knowledge, legal strategy, or lack of enforcement staff—is plainly to make certain that the individual employee is protected. Indeed, in the case of the Bethlehem Lackawanna plant, when the Attorney General instituted the earlier case in 1967 only 3.8 per cent of the nation's workforce was unemployed. U.S. Bureau of Labor Statistics, Dep't of Labor, 19 Employment & Earnings 20 (Sept.1972). The very first case involving the issue of discriminatory seniority and transfer systems was decided only in January of 1968. Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968). The discriminatory impact of a departmental seniority recall system where there have been a multitude of layoffs may not have been foreseen by Government counsel in the earlier suit, especially where the Government was concerned with establishing a favorable precedent in the case of interdepartmental transfers. Thus, this case is one which properly seeks an extension of the relief sought and obtained in the earlier case. The individual plaintiffs, we hold, are entitled to bring it. This being true, we are required to reverse the decision below so that the trial court may proceed to the merits of the case.

We do not ourselves, however, grant the preliminary relief sought. True, the scope of relief to be afforded is "so far as possible, to eliminate the present effects of past discrimination", Long v. Georgia Kraft Co., 450 F.2d 557, 561 (5th Cir. 1971). *Accord*, Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 720–21 (7th Cir. 1969). True also, the court's powers under Title VII are "broad," Vogler v. McCarty, Inc., 451 F.2d 1236, 1238 (5th Cir. 1971), and, of course, include the power to grant preliminary relief. United States v. Hayes International Corp., 415 F.2d 1038, 1044–45 (5th Cir. 1969). Moreover, the findings of past discrimination by the district court in United States v. Bethlehem

2. Not insignificantly, in debating the Equal Employment Opportunity Act, Congress refused to make Title VII the exclusive statutory basis for private suits against employment discrimination and continued to allow suits to be brought, for example, under Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. *See* 118 Cong. Rec. S1524–26 (daily ed. Feb. 9, 1972); *id.* at S1791–97 (daily ed. Feb. 15, 1972).

Steel Corp., *supra*, 312 F.Supp. 977, at 979–86, and the Bethlehem stipulation in the earlier case that until October 1, 1967, black employees were assigned on account of race to 11 of the 82 departments at the Lackawanna plant, in which the hottest, dirtiest and lowest-paying jobs were located, are together fairly conclusive of past discrimination here which cannot be frozen into the plant employment system under the Act. Griggs v. Duke Power Co., 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

But we do not delineate the precise extent of the preliminary (or final) [3] relief which might be granted for the reason that there appear to us to be several areas warranting, if not requiring, exploration by the district court. These include the question how extended a layoff must be before it is no longer temporary.[4] We should add, however, that we do not take the position, urged upon us by appellees, that in the case of an extended layoff there is truly a "bump" of white workers as that term was used in our own opinion in United States v. Bethlehem Steel Corp., *supra*, 446 F.2d 652, at 663–64, or has been described in the seminal Note, Title VII, Seniority Discrimination and the Incumbent Negro, 80 Harv.L.Rev. 1260, 1273–1274 (1967) (advocating "rightful place" as opposed to "freedom now"), and the first seniority rights cases following it, Quarles v. Philip Morris, Inc., *supra*, 279

F.Supp. 505, at 516; Local 189, United Papermakers v. United States, 416 F.2d 980, 988–91 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). Rather, we agree with the Fifth Circuit that recall privileges after an extended layoff which operate to the residual disadvantage of black workers who had been discriminated against by a seniority system can violate Title VII and are subject to judicial modification. United States v. Hayes International Corp., 456 F.2d 112, 118–19 (5th Cir. 1972). *See also* Local 1251, UAW v. Robertshaw Controls Co., 405 F.2d 29, 33 (2d Cir. 1968) (en banc) ("Seniority is wholly a creation of the collective agreement and does not exist apart from that agreement"), and Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1155–63 (1971).[5]

Some other questions which will occur to the district court in fashioning full, fair, just and adequate relief may include:

1. To what class should any relief extend? *E. g.*, should only black employees hired before the October 1, 1967, date that marked the apparent end of discriminatory hiring be assisted? Subsidiarily, of what class are the plaintiffs here representative? The Union suggests that many black employees would oppose the relief sought here.

---

3. This may be an appropriate case for the district court under Fed.R.Civ.P. 65(a)(2), to exercise its power to hear the applications for preliminary and permanent relief simultaneously.

4. Under Art. X, 10.10.05 of the 1968 Master Agreement, we are told, an employee laid off for six months or more has the right (if he has two years' plant service) to a job in any seniority pool in the plant if he is qualified to perform the job and for the promotional sequence. The court may well wish to determine whether that six months is an unreasonable time.

5. While we do not, by omission, summarily reject appellees' arguments dealing with plant safety and efficiency, the "team concept" and other factors (including individual ability) which the courts have taken into account in Title VII cases, *provided that the practice involved is essential to those goals, e. g.*, United States v. Bethlehem Steel Corp., *supra*, 446 F.2d 652, at 662, we do point out that the Master Agreement itself recognizes plant seniority as the basis for recall under certain conditions, which tends to weaken somewhat the force of appellees' arguments justifying unit seniority. *See* n. 4 *supra*.

2. How does the seniority system affect pools? [6] Should relief be limited to recall to "pools" as distinguished from recall to positions up the ladder? Parenthetically we note that this question may be academic since we gather that employees "bump up from" and "down to" the "pool" so that generally employees are recalled only to pools, but we lack the findings to be certain of this.

3. Should laidoff white employees also be treated as having plantwide seniority? If they were, would this have the effect of recalling white employees to positions held before layoff by black employees, and, if so, would this be consistent with Title VII?

Thus, in remanding to the district court, we do so for the purpose of enabling it further to explore the facts and adjust the relief accordingly, recognizing that we are not dealing in absolutes that require an appellate court to be the bull in a china shop of complex inter-employee and plant relations. At the same time we know that the district court is aware of our own injunction, so well expressed in Judge Feinberg's opinion, that "[i]f relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed." 446 F.2d 652, at 663.

The district court on remand, we are confident, will act, in the phrase of Charles V, with an "iron hand in a velvet glove."

Reversed and remanded.

6. Under the amended decree in United States v. Bethlehem Steel Corp., Civil No. 1967–32 (W.D.N.Y., filed Oct. 14, 1971), recall has worked as follows:
   A. Laidoff employees have been recalled to or assigned into pool jobs, usually entry-level jobs, on the basis of plant service;
   B. Employees have been recalled from pool jobs to higher rated jobs in their seniority unit on the basis of unit, not plant service, except as to

C. Black employees who had transferred out of the 11 "black" departments, as to whom plant service of all competing employees is used to determine the order of recall.

Apparently also Bethlehem has decreased the number of job pools from 36 to 6, thus permitting easier transfer since transfers between departments in the same pool were apparently permissible. *See* Brief for Appellee Bethlehem Steel Corp. at 8.