June MEYER, Selma Pundyk, Agnes Healy and Dorothy Dubose, individually and on behalf of all other persons similarly situated, Plaintiffs,

and

United States Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

MACMILLAN PUBLISHING CO., INC., a Corporation, Defendant.

No. 78 Civ. 2133 (MEL).

United States District Court, S. D. New York.

Nov. 17, 1981.

Douglas D. Scherer and Samuel Stein, New York City, for plaintiffs.

Gale B. Black, E. E. O. C., Washington, D. C., for plaintiff-intervenor.

Epstein Becker Borsody & Green, P. C., Ronald M. Green, Gregory K. Hiestand, Philip M. Berkowitz, of counsel, Melinda M. Sweet, Walter M. Volpi, New York City, for defendant.

LASKER, District Judge.

This case presents the question of whether earlier litigation, brought by the Federal and state governments, and culminating in injunctive relief, bars a subsequent action against the same defendant by private plaintiffs who were among the beneficiaries of the earlier Federal and state actions. We conclude that, in the circumstances of this case, it does not.

Plaintiffs, four female employees of defendant, Macmillan Publishing Co., Inc. ("Macmillan"), bring this action on behalf of a purported class under Title VII of the Civil Rights Act of 1964 (42 U.S.C. Section 2000e et seq.) ("Title VII"), alleging that Macmillan has maintained "employment policies, practices, customs, usages and attitudes which discriminate" on the basis of sex. (Third Amended Complaint, ¶ 18).[1] Macmillan moves for summary judgment pursuant to Fed.R.Civ.Pr. 56 on the grounds that a suit brought by the United States

Department of Labor, under the Equal Pay Act provisions of the Fair Labor Standards Act, 29 U.S.C. § 206(d) ("Equal Pay Act"), and a suit by the New York Attorney General, under the New York Human Rights Law, N.Y.Exec.Law §§ 290 et seq. (McKinney), both of which alleged that Macmillan engaged in sex discrimination, bar this action as res judicata.

I.

The first action was brought by the Secretary of Labor in 1974, alleging only that Macmillan violated the Equal Pay Act by "paying wages to female employees . . . at rates less than the rates at which it pays wages to male employees . . . for equal work." (Complaint, Ex. A to Affidavit of Melinda M. Sweet, in Support of Macmillan's Motion for Summary Judgment ("Sweet Affidavit")). The action concluded in a consent order and judgment, dated September 16, 1975, in which Macmillan consented to a permanent injunction against violation of the Equal Pay Act and to payment of back wages to two employees. (Consent Judgment, Ex. D to Sweet Affidavit).

The Department of Labor's action does not bar the instant action as res judicata because the scope of the earlier litigation, which precluded only discrimination on account of sex in wage rates, is far narrower than the complaint in this action, which extends to Macmillan's policies and practices with regard to recruitment, promotion, transfer, job classification, job assignment, training, provision of clerical services and office space, evaluation, and termination. (Third Amended Complaint ¶¶ 18(a), (c), (e), (k), (p), (v)). Consequently, it cannot be argued that the Department of Labor action involved substantially the same cause of action as the one stated by plaintiffs, an essential element of res judicata. Herendeen v. Champion International Corp., 525 F.2d 130, 133 (2d Cir. 1975) ("For a judgment in a prior action to be a bar to reach-

---

1. In addition, the Equal Employment Opportunity Commission ("EEOC") has intervened on behalf of plaintiffs.

ing the merits in a subsequent action ... we [must] find the requisite measure of identity of the two causes of action.").

## II.

The *res judicata* effect of the action brought under the New York Human Rights Law raises a second essential element of the doctrine: whether the party alleged to be barred from proceeding in the second action was a party to the first action, or that party's "privy." *Id.* at 133 & n. 4. In order to answer the question, it is necessary to focus in some detail on the proceedings in the Human Rights action.

The action was commenced by a complaint filed before the New York State Division of Human Rights ("the Division"), an executive department of the State of New York, in September, 1974. The caption lists the "complainants" as "Louis J. Lefkowitz, Attorney General of the State of New York, on complaints of [forty-four individually named women, including plaintiffs herein] and other aggrieved parties." (Complaint, Ex. F to Sweet Affidavit). Paragraph three of the complaint states that "[t]he *parties* named in the above caption on whose behalf the Attorney General brings this complaint are employed ... by respondent." (*Id.* (emphasis added).) Plaintiff Meyer states that she "lent [her] name [to the complaint] for purposes of a complaining witness only, and not as a party," that the Division never served a copy of the complaint on her, and that she at no time intended to submit her claims to adjudication by the Division. (Affidavit of plaintiff June Meyer, Ex. A to Stein letter of October 5, 1981, ¶¶ 3, 6, 11 ("Meyer Affidavit 2").) Meyer also states that the Division denied her request to examine its files in the Macmillan case on the grounds that she was not a party. (*Id.* ¶ 10.)

The action was terminated by an "Order after Stipulation," dated March 30, 1976, signed by the Commissioner of the Division, with copies to the Attorney General and the attorneys for Macmillan. (Ex. J to Sweet Affidavit). The Order states that "a conciliation agreement had been proposed and

signed by the parties" (*Id.* p. 1) and that their agreement "is made the Order of the Commissioner." (*Id.* p. 9.) The caption of the Order contains the name of the Attorney General as the *only* complainant. Plaintiff Meyer states that the Division never served her with a copy of either the proposed conciliation agreement or the Order (Meyer Affidavit, 2, ¶¶ 7, 8) and that, upon information and belief, none of the other plaintiffs in the instant action were served with these papers. (*Id.* ¶ 9.) Upon hearing of the proposed conciliation agreement, plaintiffs wrote a letter to the Attorney General which demonstrated not only that they did not approve his actions, but that they affirmatively disapproved them. The letter, dated February 4, 1976, states, *inter alia*, that "[t]he proposed agreement is inadequate, and we are writing to make sure no endorsement of it be ascribed to us." (Letter of Macmillan Women's Group, Ex. A to Plaintiffs' Response to Defendant's Motion for Summary Judgment.)

Macmillan argues that the presence of plaintiffs' names on the complaint, which plaintiffs consented to, and the complaint's characterization of plaintiffs as parties, is the beginning and end of the question whether plaintiffs were parties to the proceeding. In addition, Macmillan claims that it relied on its understanding that plaintiffs would be bound by the conciliation in agreeing to its terms.

Whether plaintiffs were parties to the Division proceedings is, of course, a matter of state law, and the New York Human Rights Law, while it does not speak to the precise question, is illuminating. Section 297(2) requires the Division to serve a copy of complaints filed before it "upon ... all persons it deems to be necessary ... parties." Section 297(3)(b) provides that if "the respondent and the division agree upon conciliation terms the division shall serve upon the complainant a copy of the proposed conciliation agreement," and, in addition that the complainant is given fifteen days to object to the conciliation agreement. With few exceptions, the division is required to hold a hearing on any com-

plaints received. Finally, Section 297(3)(d) requires the Division to serve copies of the "order embodying [the] agreement upon *all parties* to the proceeding" if a conciliation agreement is entered into (emphasis added).

While the statute does not address the legal consequences of the Division's failure to serve copies of the complaint, proposed conciliation and order upon the parties, two points are clear. First, the statute entitles parties to certain protections, the most important being the right to object to the conciliation agreement and to have a hearing on the objections, which, according to plaintiff's uncontested affidavits, never occurred or was even offered. Second, the Division's failure to serve plaintiffs with copies of the complaint, the proposed conciliation agreement and the order, or to afford plaintiffs a hearing on any objections they might have had to the conciliation agreement, strongly indicates that the Division, which may be presumed to act in accordance with the requirements of state law, did not consider plaintiffs to be parties to the proceedings before it. This point is reinforced by the Division's refusal to allow plaintiff Meyer access to its records in the case which she requested during the course of her preparation of the instant action. (Meyer Affidavit 2, ¶ 10)

Moreover, it is particularly significant that Arnold Fleischer, the Assistant Attorney General who was in charge of the state action, states in an affidavit submitted in opposition to the motion that the women "named in the caption of that complaint were not parties to the proceeding before the Division," and that plaintiffs "did not have the rights of parties" but rather "were complaining witnesses to the Attorney General." (Affidavit of Arnold Fleischer, Ex. C to Stein letter of October 5, 1981.) Fleischer's affidavit belies Macmillan's argument that he represented plaintiffs in the state proceeding. The fact that neither the Division nor Fleischer perceived plaintiffs as parties to the proceedings and consequently did not provide them with the protections they would have been accorded either as parties to the Division proceeding or as clients of Mr. Fleischer weighs heavily against a finding that they were parties.

Furthermore, plaintiffs' actions were consistent with their contention that they did not intend to be parties. They had retained their own attorney during the period of the proceedings (Meyer Affidavit 2, ¶ 5); their attorney had filed a complaint with the EEOC (Ex. 1 to Sweet Affidavit); and they wrote a strong letter of protest to the Attorney General upon hearing the terms of the conciliation agreement.

■ Accordingly, in view of the fact that neither the Division, the Assistant Attorney General, nor the plaintiffs understood the plaintiffs to be parties, Macmillan's contention that plaintiffs are to be deemed to have been parties for *res judicata* purposes simply because they agreed to be listed in the caption of the complaint, and arguably were characterized as parties in one paragraph of the complaint, must be rejected. Even if Macmillan had relied on the formalities of the complaint in agreeing to the conciliation agreement, the company's attorneys should have been put on notice that their understanding of the situation differed from that of all of the other participants by the fact that the caption of the Order after Stipulation does not contain any individual's names, and that copies of the Order were listed as being sent only to the Attorney General and Macmillan. Although Macmillan was not otherwise obliged to do so, if it had wished to assure that the plaintiffs were bound as parties to the terms of the conciliation agreement, it should have assumed the responsibility—since the State did not—of making certain that the statutory provisions protecting parties were complied with; that is, it should have seen to it that the Division served plaintiffs with copies of the complaint, the conciliation agreement and the Order.

■ Macmillan argues further that even if plaintiffs were not parties to the Human Rights action, they were "privies" of the Attorney General and are therefore bound by his settlement. The doctrine of privity recognizes that "in certain circumstances

persons who are not parties to an action but who are connected with it . . . are affected by the judgment . . . as if they were parties." Restatement, Judgments, §§ 83, 85. Macmillan relies primarily on *Expert Electric v. Levine*, 554 F.2d 1227 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977), in which plaintiff-firms were held barred from litigating a question resolved in a prior action brought by the trade association of which the firms were members. The court there concluded that "[i]nsofar as the association had any interests [at stake in the prior action] they were the collective interests of the individual participants." *Id.* at 1234. *Expert Electric* is clearly distinguishable from the case at bar. A trade association is created by its members precisely for the purpose of representing them. It is normally their agent, their alter ego, created, in the case of *Expert Electric*, to handle litigation, among other things, on its members' behalf. By contrast, the Attorney General's office was not in any sense the creation of, or under the control of, plaintiffs. Furthermore, plaintiffs did not approve, and in fact, disavowed, the state's actions. Moreover, as the Supreme Court has pointed out, the protection of the public interest "may not always dictate precisely the same approach to the conduct of litigation" as protection of private interests. *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (holding that an individual union member could not be deemed to be "adequately represented" by the Secretary of Labor for purposes of his right to intervene under Fed.R.Civ.Pr. 24(a).) Citing *Trbovich*, the Second Circuit recently concluded, in a case similar to the instant action, that individual employees do not have "interests such as to be in privity with the [United States] Attorney General" and that the doctrine of *res judicata* does not bar individual plaintiffs from filing a Title VII action where a previous Title VII action had been brought by the Attorney General against their employer. *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201, 1203 (2d Cir. 1972). There is no reason why the rule of *Williamson* should not be applied in this case.

Finally, even if plaintiffs were parties to the Human Rights action, it does not automatically follow that the doctrine of *res judicata* should be invoked to bar the present action. Title VII, as explicated by the Supreme Court,

> manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974) (holding that an employee does not forfeit his Title VII right of action if he first seeks relief under an arbitration clause in his collective bargaining agreement). While the Court of Appeals of this Circuit has held that a plaintiff who initiates a proceeding before the New York Human Rights Division and subsequently obtains review of the Division's decision from the state courts is barred by *res judicata* from filing a Title VII action, *Sinicropi v. Nassau County*, 601 F.2d 60 (2d Cir. 1979), the Court stated explicitly that "[t]he crucial factor is that appellant chose to submit her case to the state *courts* for review and she cannot now relitigate the same issues in federal court," *id.* at 62 (citing *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 275–76 (2d Cir. 1977)) (emphasis in original). *Sinicropi* and, to a greater extent, *Mitchell*, on which *Sinicropi* heavily relies, strongly suggest that *res judicata* will not bar a subsequent Title VII action unless plaintiff "cross[ed] the line between state agency and state judicial proceedings." *Mitchell, supra*, 553 F.2d at 276. "Had the appellant brought her [federal] claim without resorting to judicial review of the state agency's determination, a number of considerations would weigh against barring the federal action on *res judicata* grounds." *Id.* at 275.

For the reasons stated above, Macmillan's motion for summary judgment is denied.[2]

It is so ordered.

2. We leave open for determination the question whether, if it is ultimately determined that plaintiffs are entitled to equitable relief which would duplicate the injunctions already in force against Macmillan, it would be appropriate for this court to grant a further injunction. To decide the matter at this stage would be premature.