Virginia O'HALPIN, Plaintiff,

v.

NASSAU COUNTY POLICE DEPART-MENT, Nassau County Civil Service Commission and Nassau County, Defendants.

No. 84 CV 4571 (ERK).

United States District Court, E.D. New York.

Sept. 14, 1987.

Warren J. Bennia, New York City, for plaintiff.

James M. Catterson, Jr., Port Jefferson, N.Y., Snitow & Pauley, William Pauley, III, New York City, for defendants.

KORMAN, District Judge.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* She alleges that defendants illegally discriminated against her on the basis of sex by refusing to hire her as a member of the Nassau County Police Department. Both sides have moved for summary judgment. Plaintiff alleges that there is no triable question of fact and seeks summary judgment on the issue of liability. Defendants assert that plaintiff's claim for relief is precluded by the Consent Decree entered in *United States v. Nassau County*, 77 CV 1881, a pattern or practice discrimination suit brought by the United States Attorney General against Nassau County.

The relevant undisputed facts are as follows. Under the applicable provisions of New York State law, the Nassau County Police Department had segregated job classifications for its members until January 1, 1974. New York State law was amended, effective January 1, 1974, to provide for the single job title of police officer for which both men and women were eligible. Prior to 1974 women were eligible only for the positions of policewoman or police cadette while men were eligible only for the positions of police patrolman and police cadet. Applicants for the position of patrolman could be no more than 29 on the date they sat for a qualifying examination, while applicants for the position of policewoman could be no older than 34.

On March 18, 1972, the Nassau County Civil Service Commission administered an identical written examination to male applicants for the position of police patrolman and to female applicants for the position of policewoman. On November 18, 1972, a written examination was again offered to men for the position of patrolman, though no examination was offered to women. Plaintiff O'Halpin who was then 32 years old sat for the March examination and received a score of 86. She was not offered an appointment as a policewoman. Indeed, although over 500 men were appointed to the Nassau County Police Department during the period up to and including July 12, 1974, some of whom did not achieve a result as high as plaintiff's score of 86, not a single woman was appointed.

On September 21, 1977, the Department of Justice filed suit on behalf of the United States alleging that the Nassau County Police Department engaged in a pattern or practice of employment discrimination against blacks, hispanics and females. The Attorney General's suit was instituted, *inter alia*, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f), on the basis of a referral from the Equal Employment Opportunity Commission which in turn had been based upon a charge filed by plaintiff O'Halpin.

After a hearing on April 21, 1982, Judge Mishler approved and entered a Consent Decree designed to correct the Police Department's alleged pattern and practice of

discrimination. The Consent Decree provided for job offers, retroactive seniority and back pay remuneration. The Consent Decree did not provide for any relief to Ms. O'Halpin as it only provided for appointment of those women who met, *inter alia,* the requirement that a police patrolman be no more than 29 as of the date the qualifying examination was taken.

In June 1983, plaintiff O'Halpin attempted to intervene, pursuant to Fed.R.Civ.P., Rule 24, in the action brought by the Attorney General. Her motion to intervene was opposed by both the Attorney General and Nassau County. The motion was denied as untimely by Judge Mishler, who noted that O'Halpin had received notice of the Consent Decree and had had an opportunity to inspect it. A motion for re-argument of that decision was denied in November 1983. The instant action was thereafter filed on November 21, 1984.

## DISCUSSION

### A. *Defendants' Motion for Summary Judgment*

■ Defendants contend that plaintiff is precluded from litigating the instant claims by the doctrine of res judicata. Specifically, defendants maintain that the Consent Decree entered in *United States v. Nassau County,* 77 CV 1881, which suit was brought in response to a complaint filed by plaintiff at the EEOC, bars plaintiff from "relitigating" her claims in this action. This claim is frivolous.

*United States v. Nassau County* was an action brought by the United States to which plaintiff was not a party and it was *not* a class action. Moreover, by its very terms, the applicable provision of the Consent Order provides that the remedies to which Nassau County agreed were "[i]n settlement of all of the claims of the United States for remedial relief on behalf of ... females alleged to have been the victims of a pattern or practice of discrimination ... with respect to job opportunities in the [Nassau County Police Department], as well as all of the claims of individual ... females *who consent to and/or accept the relief provided under Part VI of this De-*

*cree.* ..." Consent Decree ¶ 30 (emphasis supplied).

Plaintiff plainly did not "consent to and/or accept the relief provided under Part VI of this Decree." The Consent Decree is, therefore, inapplicable to plaintiff by its terms. Moreover, this consideration aside, there are compelling considerations of policy which preclude the defense of res judicata here. Specifically, as the Supreme Court has held:

> The 1972 amendments retained the private right of action as "an essential means of obtaining judicial enforcement of Title VII," while also giving the EEOC broad enforcement powers. In light of the "general intent to accord parallel or overlapping remedies against discrimination," we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all "class" members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer. This is especially true given the possible differences between the public and private interests involved.

*General Telephone Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 332–33, 100 S.Ct. 1698, 1707–08, 64 L.Ed.2d 319 (1980) (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)).

Similarly in *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201 (2d Cir.1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1902, 36 L.Ed.2d 390 (1973), a case considering whether recalls of laid-off employees were racially discriminatory in violation of Title VII, the Court of Appeals refused to bind individual employees by an order entered in a previous suit brought by the Attorney General. "For purposes of res judicata or collateral estoppel, the private citizens in this case are not bound by the Attorney General's action in the former case since they neither were parties to it, nor have interests such as to be in privity with the Attorney General." 468 F.2d at 1203 (citations omitted). The Court of Appeals noted that the Attorney General may have omit-

ted to seek relief "for reasons such as its lack of knowledge, legal strategy, or lack of enforcement staff...." 473 F.2d at 1204. *Accord Meyer v. MacMillan Publishing Co., Inc.*, 526 F.Supp. 213, 217 (S.D. N.Y.1981) ("[T]he protection of the public interest 'may not always dictate precisely the same approach to the conduct of the litigation' as protection of private interests.") (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)); *Virgo v. Local Union 580*, 107 F.R.D. 84, 90 (S.D.N.Y.1985) ("[A] consent judgment in an EEOC enforcement action does not preclude an individual who was not a party to the action from instituting a separate Title VII action alleging discrimination that was the subject of the EEOC's suit."); Note, *EEOC Consent Decrees: Nonbinding on Unsatisfied Private Parties Under Title VII*, 53 Geo.Wash.L. Rev. 629 (1985).

The Attorney General here made a judgment to enter into a Consent Decree which did not provide relief to plaintiff. In so doing, he may have determined that it was in the public interest to negotiate a settlement providing broad but incomplete relief, rather than to litigate the case to ensure that every conceivable victim of discrimination was made whole. Moreover, even if the Attorney General believed that O'Halpin was not legally entitled to relief, such a judgment cannot bind Ms. O'Halpin.

Nor can plaintiff be estopped from litigating her claim because she failed to to intervene in *United States v. Nassau County*. While Fed.R.Civ.P., Rule 24, provides for intervention by those with an interest relating to the transaction which is the subject of the action, just as 42 U.S.C. § 2000e–5 provides for similar intervention by an aggrieved party in actions brought by the Attorney General, there is no suggestion that such intervention is mandatory. "As a general rule, a nonparty is not obligated to intervene in a pending action simply because the litigation presents matters affecting the nonparty." *Staten Island Rapid Transit Operating Authority v. Interstate Commerce Commission*, 718 F.2d 533, 543 (2d Cir.1983). "Intervention has been conceived as a device that permits

a nonparty to become a party when it wishes; mandatory joinder has been left to distinctive procedures such as Civil Rule 19." C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4452 at 446 (1981).

Accordingly, plaintiff is not precluded from bringing suit on the basis of the Consent Decree in an action under which she recovered nothing.

### B. *Plaintiff's Motion for Summary Judgment*

In order to establish a prima facie case of disparate treatment based on sex, in violation of Title VII, "[t]he plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Moreover, even in the absence of proof that there was "an available position" for which plaintiff was qualified, if plaintiff is a member of a class which is alleged to have been the victim of a broad based policy of discrimination, proof of that allegation will provide "reasonable grounds to infer that individual hiring decisions were made in pursuit of the discriminatory policy and to require the employer to come forth with evidence dispelling that inference." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 359, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985).

■ The undisputed facts of this case establish a prima facie case of discrimination based on sex. Specifically, it is not contested that a conscious decision was made to hire only males as police patrolmen and not to hire any women for positions as policewomen. The evidence shows that, while plaintiff scored higher on the March 1972 examination than a number of men who were subsequently appointed,

her application was never processed. Indeed, while ultimately over 500 men were appointed to the Nassau County police force based on the examinations taken in March and November of 1972, not a single woman was appointed to the position of policewoman.[1]

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendants to articulate "clear and reasonably specific" nondiscriminatory reasons for the denial of an employment opportunity. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The requirement that the defendants' explanation "be clear and reasonably specific ... arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded 'a full and fair opportunity' to demonstrate pretext." *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 258, 101 S.Ct. at 1096.

Moreover, mere "articulation" is not sufficient. "In litigation the only way a defendant can 'articulate' the reason for his action is by adducing evidence that explains what he has done; when an executive takes the stand to 'articulate' his reason, the litigant for whom he speaks is thereby proving those reasons." *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 28–29, 99 S.Ct. 295, 297, 58 L.Ed.2d 216 (1978) (Stevens, J., dissenting). Although the defendants need not satisfy the trier of fact that their explanation is true, the defendants have the burden of coming forward with admissible evidence "to support their legitimate nondiscriminatory explanation" for refusing to

hire plaintiff. *Sweeney,* 439 U.S. at 25, n. 2, 99 S.Ct. at 1867 & n. 2; *International Brotherhood of Teamsters v. United States,* 431 U.S. at 359 & n. 45, 97 S.Ct. at 1867 & n. 45; *Loeb v. Textron Inc.,* 600 F.2d 1003, 1011–1012 (1st Cir.1979). "Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 255, n. 9, 101 S.Ct. at 1094 n. 9.

█ Defendants here assert that budgetary constraints precluded the appointment of any policewoman, including plaintiff, to the force during the period at issue here. Defendants rely solely on a June 5, 1973 memorandum of Louis J. Frank, Commissioner of Police, which claimed that due to "budgetary" problems the Police Department would not process the applications of any female candidates until mid–1974. Although defendants have provided no specific evidence beyond this conclusory assertion and although 500 male officers were appointed during the relevant period at an annual cost of several million dollars, defendants contend that the job duties of patrolman and policewoman were different and imply—without saying so explicitly—that the Nassau County Police Department was able to contain costs because it could use male officers more widely than female officers.

This carefully worded articulation comes in an affidavit of defendants' counsel. Because he has no personal knowledge of the facts, his explanation constitutes nothing more than argument in affidavit form. Such argument is not sufficient to shift the burden to the plaintiff to come forward with any further evidence that the proffered explanation for disparate treatment was simply a pretext for intentional discrimination.[2] Based on the "legally man-

---

1. Defendants argue that they cannot be liable to plaintiff here because Title VII did not become applicable to states and their political subdivisions until March 24, 1972—six days after the administration of the qualifying examination to plaintiff O'Halpin. The examination, however, is not alleged to be discriminatory. Indeed, it was identical to the one administered to male

applicants. The relevance of the examination is (1) that it demonstrated that plaintiff was qualified and, (2) that defendant regarded it as sufficient to establish qualification for service because it hired male applicants after March 24, 1972, based on the examination scores.

2. F.R.Civ.P., Rule 56, provides that affidavits opposing motions for summary judgment "shall

dated inference of discrimination" from the evidence adduced by plaintiff (*Texas Board of Community Affairs v. Burdine, supra,* 450 U.S. at 255, n. 10, 101 S.Ct. at 1095 n. 10), which was not dispelled by an adequate evidentiary proffer, plaintiff is entitled to summary judgment on the issue of liability. *International Brotherhood of Teamsters v. United States, supra,* 431 U.S. at 361–62, 97 S.Ct. at 1867–68; *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577–578, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *Loeb v. Textron Inc.,* 600 F.2d 1003, 1015 (1st Cir.1979).[3]

Accordingly, for the reasons stated, defendants' motion for summary judgment is denied. Plaintiff's motion for summary judgment on the issue of liability is granted.

SO ORDERED:

be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

3. The defendants also assert that plaintiff was too old to be appointed a police patrolman. Because it is undisputed that plaintiff's age did not render her unqualified to be a policewoman, defendants cannot maintain that age was a barrier to plaintiff's joining the police force in that capacity.