[No. 31484-0-I.   Division One.   December 30, 1993.]

KIMBERLY LOVERIDGE, *Appellant,* v. FRED MEYER, INC., *Respondent.*

*James R. Walsh,* for appellant.

*Francis L. VanDusen* and *Miller, Nash, Wiener, Hager & Carlsen,* for respondent.

PEKELIS, A.C.J. — Kimberly Loveridge appeals the dismissal of her complaint for sexual harassment against Fred Meyer. The trial court granted summary judgment on the grounds of res judicata, ruling that a federal consent decree, which dismissed a Title VII action initiated by the EEOC against Fred Meyer, precluded Loveridge's lawsuit alleging state statutory and common law claims. We reverse.

In 1987 Kimberly Loveridge filed a discrimination charge with the EEOC against her employer, Fred Meyer.[1] Loveridge charged that she had been discriminated against in violation of Title VII. She alleged that she had been subjected to continuous on-the-job sexual harassment and had been constructively discharged. Fred Meyer contested the charges.

After an investigation, the EEOC determined that the evidence failed to establish a constructive discharge, but that evidence of sexual harassment by a co-worker "establishe[d] a violation of Section 703(a) of Title VII". After conciliation attempts failed,[2] the EEOC brought an action under Title VII in federal court in May of 1989. The complaint was based on Loveridge's charges of sexual harassment and sought injunctive relief "for defendant's failure to correct this unlawful employment practice".[3] Loveridge did not intervene as a plaintiff in the suit.

Meanwhile, Loveridge filed a "Complaint for Sexual Harassment" against Fred Meyer in Snohomish County Superior Court, seeking damages for alleged negligence, "outrageous misconduct", and violation of Washington's Law Against Discrimination, RCW 49.60.

---

[1] The claim was simultaneously submitted to the Washington State Human Rights Commission, which was notified that pursuant to a "work-sharing agreement", the charge would initially be processed by the EEOC.

[2] According to Fred Meyer, conciliation failed because Ms. Loveridge would not agree to accept the terms of the agreement negotiated by the EEOC and Fred Meyer, and because Fred Meyer "refused to enter into any settlement agreement that did not include a full release of all Ms. Loveridge's claims".

[3] Specifically, the EEOC sought a permanent injunction "enjoining defendant . . . from engaging in any unlawful employment practice which discriminates on the basis of sex", and requested that the court order Fred Meyer "to institute and carry out policies, practices and programs which provide equal employment opportunities for women in a discrimination-free environment and which eradicate the effects of their unlawful employment practices."

In 1990, Fred Meyer and the EEOC entered into a consent decree in the Title VII action wherein Fred Meyer agreed to implement a policy of nondiscrimination. The portion of the decree titled "Settlement Scope" provided as follows:

> This consent decree effectuates the full, final, and complete resolution of all Title VII allegations of unlawful employment practices encompassed by the original discrimination charge filed by Kimberly Loveridge, the EEOC's administrative determination, and the complaint filed herein, including all claims which could have been asserted by the EEOC . . ..

The District Court approved the decree on April 17, 1990, as "the final decree of this court in full settlement of this action."

Subsequently, Fred Meyer moved in Snohomish County Superior Court to dismiss Loveridge's complaint, arguing that the claims were barred by the defense of res judicata. Concluding that "Plaintiff's claim of sexual harassment must be dismissed as *res judicata* because these claims were previously asserted and dismissed [in the federal action]", the court granted the motion and dismissed plaintiff's claims with prejudice. Loveridge appeals.

Loveridge contends that the doctrine of res judicata does not apply here because she was not a party to the federal decree and because the claims asserted in this lawsuit differ from those dismissed in the federal action. She also asserts that the consent decree was not a "final judgment".

■ "Claim preclusion, more traditionally called res judicata, is a doctrine designed to curtail the relitigation of a claim or cause of action." Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 812 (1984-1985); *see, e.g., Alcantara v. Boeing Co.*, 41 Wn. App. 675, 678 n.4, 705 P.2d 1222, *review denied*, 104 Wn.2d 1022 (1985). Under principles of federal supremacy, a federal judgment must be given full faith and credit in the state courts, which includes recognition of the res judicata effect of the federal judgment. 1B J. Moore, J. Lucas & T. Carrier, *Federal Practice* ¶ 0.406[2], at 275 (2d ed. 1991); *Alcantara*, 41 Wn. App. at 678. Moreover, "[f]ederal law determines the preclusive effect of federal orders on a question of federal law, regardless of whether the court applying the federal

judgment is state or federal." *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir. 1993) (citing 18 C. Alan Wright, A. Miller & E. Cooper, *Federal Practice* § 4468 (1981)); *see also Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 761 n.8 (2d Cir.), *cert. denied*, 479 U.S. 885 (1986); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 243 n.2 (5th Cir. 1983).

■ The basic federal claim preclusion principle is as follows:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

(Citation omitted.) *Commissioner v. Sunnen*, 333 U.S. 591, 597, 92 L. Ed. 898, 68 S. Ct. 715 (1948).

■ Because Loveridge was not a party to the federal decree, resolution of this case turns on the question of whether Loveridge and the EEOC were in privity, that is, whether they had sufficient identity of interest so that Loveridge may be treated as a party for claim preclusion purposes. In the res judicata context, the issue of privity is decided as a question of law. *NAACP v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990); *Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 607 (S.D.N.Y. 1990) ("[P]rivity is a legal determination . . . as to whether the relationship between the parties is sufficiently close to support preclusion.").

■ In general, even if a judgment purports to effect the rights of third parties, those parties are not bound by the judgment unless their interests were adequately represented by a party to the litigation. *See Martin v. Wilks*, 490 U.S. 755, 104 L. Ed. 2d 835, 109 S. Ct. 2180 (1989). The *Wilks* Court reiterated the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a

party by service of process". 490 U.S. at 761 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 85 L. Ed. 2d 22, 61 S. Ct. 115 (1940)). The Court nonetheless recognized that "in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." 490 U.S. at 762 n.2 (citing *Hansberry*, 311 U.S. at 41-42; *Montana v. United States*, 440 U.S. 147, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979)); *see also, e.g., Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 688 n.9 (7th Cir. 1986) ("a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative") (quoting *Nash Cy. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir. 1981)).

Fred Meyer argues that there was a sufficient identity of interest here because the EEOC's suit against it was based solely on Loveridge's charges of discrimination. Fred Meyer additionally contends that if Loveridge wished to protect any individual rights or interests, she could have invoked her unqualified right to intervene in the EEOC action under section 706(f) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

■ We believe this issue is settled by federal law holding (1) there is no obligation to invoke intervention procedures to avoid application of res judicata, and (2) an individual Title VII claimant whose interests in fact diverge from those of the EEOC is not deemed a "party or privy" to an EEOC suit resolved by consent decree.

First, in *Wilks*, the Supreme Court rejected the argument that a party's failure to intervene in a Title VII lawsuit that might affect that party's interests forecloses the opportunity to later litigate the issue in a new action:

> "The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. . . .
> Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.

490 U.S. at 763, 765 (quoting *Chase Nat'l Bank v. Norwalk*,

291 U.S. 431, 441, 78 L. Ed. 2d 894, 54 S. Ct. 475 (1934)); *see also* 18 C. Wright, A. Miller & E. Cooper § 4452, at 446 ("a nonparty is not precluded from relitigating matters decided in a prior action simply because it passed by an opportunity to intervene"); *O'Halpin v. Nassau Cy. Police Dep't*, 670 F. Supp. 75, 78 (E.D.N.Y. 1987); *cf. Antrim Mining, Inc. v. Davis*, 775 F. Supp. 165, 168 (M.D. Pa. 1991) (parties possess no power to alter this rule merely by including language in a consent decree purporting to bind nonparties). Thus, Loveridge cannot be deemed bound by the EEOC consent decree merely because she passed up the opportunity to intervene in the EEOC action under 42 U.S.C. § 2000e-5(f)(1).[4]

Fred Meyer disputes the applicability of the *Wilks* rationale, citing section 108 of the Civil Rights Act of 1991,[5] which was enacted to legislatively repudiate the result in *Wilks*. Even assuming that this portion of the 1991 legislation applies retroactively,[6] it is irrelevant to the situation before this court. By its own terms, section 108 precludes only challenges to "*an employment practice that implements* . . . a litigated or consent judgment or order that resolves a claim of employment discrimination . . .." (Italics ours.) 42 U.S.C. § 2000e-2(n)(1)(A).

---

[4]The authority cited by Fred Meyer, *Adams v. Proctor & Gamble Mfg. Co.*, 697 F.2d 582 (4th Cir. 1983) (en banc) (per curiam), *cert. denied*, 465 U.S. 1041 (1984) is distinguishable for two reasons. First, the holding was not based on the doctrine of claim preclusion, but rather on an interpretation of 42 U.S.C. § 2000e-5(f)(1), which governs the circumstances under which the EEOC may issue a right to sue letter. *Adams* holds only that the timely filing of an action by the EEOC cuts off any private right to sue under Title VII. Second, even assuming the Fourth Circuit's rationale could be extended to the res judicata context, *Adams* was decided before the Supreme Court's decision in *Wilks*.

[5]Pub. L. No. 102-166, Title I, § 108 (1991) (codified at 42 U.S.C. § 2000e-2(n)).

[6]The great majority of the federal circuits to address the issue have found that the 1991 act applies prospectively only. *E.g., Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir. 1992) (section 108 prospectively only), *cert. denied*, 121 L. Ed. 2d 49, 113 S. Ct. 86 (1992). The issue of retroactivity of the 1991 act is now pending before the United States Supreme Court in two consolidated cases, *Harvis v. Roadway Express, Inc.*, 973 F.2d 490 (6th Cir. 1992), *cert. granted in part sub nom. Rivers v. Roadway Express, Inc.*, 122 L. Ed. 2d 649, 113 S. Ct. 1250 (1993) and *Landgraf v. USI Film Prods.*, 968 F.2d 427 (5th Cir. 1992), *cert. granted in part*, 122 L. Ed. 2d 649, 113 S. Ct. 1250 (1993), but no decision has been announced.

Congress's clear intent in 1991 was to prevent strangers to prior Title VII litigation from collaterally attacking final civil rights decrees and thereby delaying or preventing the implementation of Title VII remedies aimed at eradicating discriminatory practices. *See, e.g., Davila v. New York Hosp.*, 813 F. Supp. 977, 979 n.2 (S.D.N.Y. 1993) ("Section 108 overturns the decision in *Martin v. Wilks* . . . as regards the permissibility of collateral challenges to affirmative action plans").[7] The legislation simply does not address the issue of whether a complainant, the *victim* of an employer's discriminatory practices, may pursue *additional* individual Title VII claims against an employer despite entry of a Title VII decree between the employer and the EEOC. The latter situation does not frustrate the purpose of Title VII, because the decree itself remains intact. Thus, we conclude that it is the result in *Wilks*, rather than the general principles of privity and claim preclusion *Wilks* refers to, that Congress abrogated in 1991.

■ Second, this is not a case where the EEOC's interests can be deemed closely aligned with the interests of the individual Title VII claimant. In *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1980), the Supreme Court analyzed the relationship between the EEOC and the charging individual as follows:

> [T]he EEOC is not merely a proxy for the victims of discrimination . . .. Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims, the agency is guided by "the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement." 118 Cong. Rec. 4941 (1972). When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.

446 U.S. at 326; *see generally* Note, *EEOC Consent Decrees: Nonbinding on Unsatisfied Private Parties Under Title VII*,

---

[7]*See generally* Samuel Issacharoff, *When Substance Mandates Procedure:* Martin v. Wilks *and the Rights of Vested Incumbants in Civil Rights Consent Decrees*, 77 Cornell L. Rev. 189 (1992) (section 108 attempts legislatively to overturn *Martin* and to enact prohibitions against third party attacks on consent decrees).

53 Geo. Wash. L. Rev. 629, 653 (1985) (a "divergence of interests exists between the Commission and private claimants" even when the EEOC brings an action solely based on a charge of an aggrieved individual).

A case not cited by either party is particularly instructive in resolving this issue. In *Riddle v. Cerro Wire & Cable Group, Inc.*, 902 F.2d 918 (11th Cir. 1990), the appellant Nora Riddle filed a charge of sex discrimination with the EEOC. The EEOC investigated the charge and determined that there was reasonable cause to believe that defendant, Cerro, had discriminated against Riddle. The EEOC filed suit against Cerro, alleging sex discrimination in violation of Title VII. Riddle did not intervene as a plaintiff in the suit. Ultimately, the EEOC and Cerro negotiated a settlement and the District Court entered a consent decree terminating the litigation. The EEOC subsequently issued Riddle a right-to-sue letter and Riddle filed a Title VII suit against Cerro, alleging essentially the same charges that formed the basis of the EEOC's suit against Cerro.

The District Court granted summary judgment against Riddle. Among the issues on appeal was whether the consent decree entered in the prior litigation barred Riddle's suit under the doctrine of res judicata. As here, the key question was identity of interests between Riddle and the EEOC. Cerro argued that the EEOC had actually represented Riddle in the prior action, that the Commission had vigorously prosecuted the case on Riddle's behalf, and that Riddle had a statutory right to intervene in the EEOC's suit had she been dissatisfied with the EEOC's handling of the case.

The court rejected these arguments, holding that Riddle and the EEOC did not have the same interests in pursuing the litigation against Cerro. Relying on *Wilks* and *General Telephone*, the court reasoned as follows:

> The [*General Telephone*] court's analysis of the relationship between the EEOC and an individual victim of discrimination indicates that the interests of the two parties are not always identical. The EEOC is primarily interested in securing equal

employment opportunity in the workplace. That interest is often most completely advanced through conciliation agreements or consent decrees of the kind involved in this case, where the employer agrees to take broad remedial steps to eradicate discrimination. The aggrieved individual, on the other hand, is primarily interested in securing specific personal relief of the kind Riddle is seeking in her private action against Cerro. The differing interests of the EEOC and of the aggrieved individual are not necessarily compatible.

902 F.2d at 922-23. The court held that Cerro was not entitled to summary judgment because it had not demonstrated that Riddle and the EEOC were in privity. 902 F.2d at 923; *see also* *O'Halpin*, 670 F. Supp. at 77 (relief obtained by an EEOC consent judgment does not necessarily resolve "possible differences between the public and private interests involved").

▆ The facts of the present case compel the same conclusion. Initially, Loveridge manifested her divergent interest by refusing to accept the terms of a conciliation agreement negotiated by the EEOC with Fred Meyer. Additionally, the consent decree entered in the EEOC action required only that Fred Meyer take steps to eradicate discrimination generally. Loveridge was not entitled to any benefits from the consent decree, since it provided for only injunctive relief designed to ensure Fred Meyer would refrain from discriminatory practices.

Loveridge's state claims, by contrast, seek to secure "specific personal relief" different in kind from that obtained in the prior action. Indeed, the facts of this case are even more compelling, because in *Riddle* the EEOC had in fact sought and obtained specific personal relief for Riddle in the form of back pay and promotion, which she declined to accept. Here, the EEOC never even sought any personal relief on Loveridge's behalf. *See O'Halpin*, 670 F. Supp. at 78 (refusing to apply res judicata where government entered into a consent decree with employer that provided "broad but incomplete relief" because it provided no relief to plaintiff).[8]

---

[8]The cases relied upon by Fred Meyer are plainly distinguishable. In *Johnson v. American Airlines, Inc.*, 157 Cal. App. 3d 427, 203 Cal. Rptr. 638 (1984), the California court held that the plaintiff had been "adequately represented" in a prior Title VII litigation because the suit was a class action. The Supreme Court has specifically recognized class actions as one of the exceptions to the rule that

In its motion for reconsideration, Fred Meyer argues that *Riddle* is distinguishable because the plaintiff there had placed the employer on notice that she objected to the decree before it had been entered. This distinction is unpersuasive. Fred Meyer candidly admits that throughout the proceedings the EEOC advised Fred Meyer that it "would not dismiss Loveridge's claims without her consent". Motion for Reconsideration, at 8. Fred Meyer also knew that Loveridge had rejected a proposed conciliation agreement. Yet Fred Meyer agreed to entry of the decree without any indication that Loveridge had consented. Loveridge was not a party; hence, no affirmative act was required on her part.[9]

In any event, we do not agree that the privity inquiry turns on notice to the employer of an individual nonparty claimant's objection to a proposed consent decree; instead, our focus is on the relationship between the EEOC and the nonparty. As already discussed, we find the identity of interest between Loveridge and the EEOC insufficient to establish claim preclusion under the circumstances.

In sum, we conclude, as a matter of law, that because Loveridge was not a party or privy to the federal decree, the federal judgment does not preclude litigation of Loveridge's sexual harassment claims.[10]

---

nonparties may not be bound by a judgment. *Wilks*, 490 U.S. at 762 n.2. Moreover, the plaintiff in *Johnson* had "participated actively" in the class action settlement. 157 Cal. App. 3d at 431, 433. Fred Meyer also cites *Jones v. Bell Helicopter Co.*, 614 F.2d 1389 (5th Cir. 1980). We find the *Riddle* court's analysis of the *Jones* case persuasive: "*Jones*, unlike the present case, did not involve a clear divergence of interests between the Commission and the aggrieved individual. . . . Moreover, the *Jones* case did not take into account the Supreme Court's analysis of the relationship between the EEOC and the aggrieved individual, explained in *General Telephone*." 902 F.2d at 923 n.6.

[9]In *Riddle*, the consent decree had in fact afforded the claimant a measure of individual monetary relief, which she was entitled to receive upon execution of a signed release. *See* 902 F.2d at 922. Riddle rejected the award and refused to sign the release. Here, by contrast, the decree entitled Loveridge to nothing individually, and she therefore had nothing to reject.

[10]Because the appeal is necessarily resolved on this basis, we need not address the issues of whether there was an identity of claims or whether the consent decree was a "final judgment" for res judicata purposes.

Finally, even assuming that the decree would preclude additional Title VII litigation, we note that the consent decree does not expressly extinguish Loveridge's claims available under state law. In *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770 (4th Cir. 1991), the Fourth Circuit reversed a grant of summary judgment on the grounds that res judicata arising from a consent order only protected defendant from claims that were terminated under its express terms. " '[C]laim preclusion will not apply ... if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation.' " 945 F.2d at 775 (quoting *Keith v. Aldridge*, 900 F.2d 736, 740-41 (4th Cir.), *cert. denied*, 498 U.S. 900 (1990)). The court determined that the complaint did not manifest an intent to preclude claims which could have been brought but were not. Thus, plaintiff was only precluded from raising claims that were in fact raised in the prior litigation.

While Fred Meyer argues that the decree was intended to foreclose any conceivable claim of discrimination that might be brought by Loveridge, the language of the decree only forecloses "all *Title VII allegations* of unlawful employment practices encompassed by the original discrimination charge ... including all claims which could have been asserted *by the EEOC*". (Italics ours.) Not only does the consent decree fail to mention claims available to Loveridge as a matter of state law, but it also specifically limits its scope to claims cognizable under Title VII.

█ We decline to interpret the language of the consent decree as broadly as Fred Meyer suggests. If Fred Meyer wished to ensure that Loveridge would be bound by the federal decree, it had the option of seeking to join Loveridge as a party. *Cf. Wilks*, 490 U.S. at 765 ("It makes sense ... to place on [the parties to the lawsuit] a burden of bringing in additional parties where such a step is indicated, rather than placing on potential additional parties a duty to intervene".).

In sum, under federal rules of res judicata, Loveridge is not precluded from relitigating her individual claims of sex discrimination. Accordingly, we conclude as a matter of law

that Loveridge is entitled to the opportunity to litigate her state claims of discrimination in state court.

Reversed and remanded.[11]

SCHOLFIELD and FORREST, JJ., concur.

After modification, further reconsideration denied February 24, 1994.

Review granted at 124 Wn.2d 1013 (1994).

---

[11]Fred Meyer has moved under RAP 10.2(i) and RAP 18.9(a) for $500 in sanctions for Loveridge's failure to timely file her brief. Loveridge has neither responded to the motion nor contested Fred Meyer's supporting affidavit. We therefore grant the motion and order Loveridge to pay Fred Meyer $500 as a sanction for noncompliance with RAP 10.2(i).